## Patterson et al., Appellants, *v.* Palley Manufacturing Company (et al., Appellant).

Argued October 5, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*S. V. Albo*, with him *S. C. Pugliese*, for plaintiffs.

*Samuel W. Pringle*, with him *Jacob A. Markel* and *Dalzell, McFall, Pringle & Bredin*, for defendant Construction Company.

OPINION BY MR. JUSTICE HORACE STERN, November 8, 1948:

In this accident case a superabundance of detail in the testimony has resulted in an unnecessarily voluminous record of over 800 printed pages. The verdicts were in favor of plaintiffs and the court overruled defendant's motion for judgment n. o. v. Considering on the present appeal only the evidence favorable to plaintiffs,—as is proper in connection with such a motion,—the facts, when confined to those necessary for judicial determination of the issues involved, are as follows:

Palley Manufacturing Company owned and operated a factory building on the southwest corner of Bidwell Street and Faulsey Way on the North Side of the City of Pittsburgh. In 1941 it purchased an additional strip of ground to the rear of its property and extending at right angles to it, of a width of 60 feet and a length of 484 feet from Faulsey Way on the north to Western Avenue on the south. Approximately midway on this strip, and quite distant, therefore, from any of the surrounding streets, was a 75-year-old stable building constructed of common brick and lime mortar; it was 1½ stories in height, extended 52 feet from

east to west and 25 feet from north to south, and its east wall was parallel to, and about 2 or 3 feet distant from, the rear or west wall of another factory building on Bidwell Street belonging to Arbuthnot-Stephenson Company. Palley Manufacturing Company, desiring to construct an addition to its plant on this newly acquired lot, entered into a contract with Branna Construction Corporation for that purpose, and also into a separate supplemental contract for the demolition of the stable building. On March 27, 1945, the latter work was started by Branna Construction Corporation and was completed on the fourth day, but meanwhile, on the evening of the third day, March 29, between 6:30 and 7:00 o'clock, the accident occurred which gave rise to the present litigation.

It appears that the lot on which the stable was located had been used for many years by children in the neighborhood as a playground. While the work of demolition was under way a number of these children, including plaintiff John Patterson, a lad then two weeks short of 14 years of age, were in the habit, after school hours, of congregating at one end of the lot in order to watch the operation, and, in the late afternoons after the workmen had retired, and again in the evenings, they would play around on the premises, especially in and about the partially dismantled stable building; their presence at such times was known generally to the workmen, and the official of Branna Construction Corporation who was in charge of the work had received direct information in regard thereto.

On the afternoon of March 29 a rather heavy rain began to fall at about a quarter to three o'clock, whereupon the men quit work, and, as the rain continued until on toward four o'clock, they did not return then to the job but quit the premises for the day. At that time the work had proceeded to a point where substantially all the walls of the stable had been levelled except a part of the east wall which still stood to a height

variously estimated at from 10 to 15 feet. In the afternoon, and again in the evening, several of the children, as on previous occasions, entered the stable area and played on and around the remaining portions of the walls. Suddenly the accident occurred. While three of the boys stood on the top of the east wall and the Patterson lad was standing below on the inner side of the wall and about 3 or 4 feet distant from it and was talking to them, a large section of the wall suddenly collapsed and young Patterson was buried from the waist down under a mass of bricks. The result was that he was severely and permanently injured, and he, by his father as guardian, and his father in his own right, brought the present action against Palley Manufacturing Company and Branna Construction Corporation to recover damages. At the close of the trial the court gave binding instructions in favor of Palley Manufacturing Company, and its action in so doing is not contested by any of the other parties. The jury returned verdicts against Branna Construction Corporation in the sum of $10,000 for the minor and $2,500 for the father. A motion of Branna Construction Corporation for judgment n. o. v. being overruled, that defendant now appeals, while plaintiffs also appeal from a refusal by the court to grant motions which they filed for a new trial because of alleged inadequacy of the verdicts.

The theory upon which plaintiffs claim liability on the part of Branna Construction Corporation is that its workmen, when quitting the job on the afternoon of March 29th, were leaving the premises in a condition which constituted a foreseeable danger to children who could have been expected to come that evening into the stable and play around the east wall. This danger resulted from the fact that, in the course of the demolition, bricks had fallen or been thrown into the narrow space between the east wall of the stable and the rear wall of the Arbuthnot-Stephenson building to a height equal to that of the east wall as it then stood. An expert

builder and wrecker who testified on behalf of plaintiffs stated that it was negligence on the part of the workmen to throw the bricks, or allow them to fall, in this narrow space, since their weight, massed in that position, would exert a pressure against the wall itself; that weight and resulting pressure were greatly augmented by the absorption of the rain-water by the porous bricks; moreover the wall would naturally have been softened and weakened by the rainfall upon it tending to pulverize the mortar; there was also testimony that the workmen had scraped or chipped a section of the entire length of the wall, at a height of about three or four inches above the ground, with mattocks, sledge hammers and crowbars. The effect of all these circumstances was, according to the expert, that the collapse of the wall might readily have been anticipated. Since Branna Construction Corporation had been put on notice that children had each evening been playing on and around this wall and it had every reason to believe that they would do so again on that evening with likely danger to themselves, plaintiffs justly contend that defendant's liability for the accident which happened was thereby established.

In *Fitzpatrick v. Penfield*, 267 Pa. 564, 109 A. 653, a wall which had been left standing in a weakened condition after a fire fell upon and killed three boys, who, with other children, had been in the habit of playing around in the yard immediately adjoining the wall. Although a new trial was granted the defendant for other reasons, it was there decided that the owner of the building of which the wall had formed a part could be held liable in damages for the accident if negligence in regard to the proper maintenance of the wall in a safe condition was proved. That case differs in several respects from this one but in many of its features is not dissimilar, and it throws at least some light upon the legal problems here involved. While there it was the owner of the property who was charged with responsi-

bility, in the present case Branna Construction Corporation, being an independent contractor in possession of the property on which its work was being performed, was subject to the same liabilities as any other possessor or occupier of land: *Powell v. Ligon*, 334 Pa. 250, 253, 5 A. 2d 373, 375.

Section 339 of the Restatement of the Law of Torts, so far as here relevant, is as follows: "A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if (a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and (b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it." This section of the Restatement has been cited with approval by our appellate courts in several instances: *Thompson v. Reading Company*, 343 Pa. 585, 23 A. 2d 729; *Altenbach v. Lehigh Valley Railroad Company*, 349 Pa. 272, 37 A. 2d 429; *Allen, Administrator, v. Silverman*, 355 Pa. 471, 50 A. 2d 275; *Krepcho v. Erie*, 145 Pa. Superior Ct. 417, 21 A. 2d 461. When applied to the facts of the present case it spells liability on the part of defendant, because (a) defendant knew that children were likely to trespass on the premises; (b) it knew or should have known, as professional builders and wreckers, that there was involved in the standing remnant of the wall an unreasonable risk of harm to such children; and (c) the children because of their youth did not realize the risk involved in coming within the area made dangerous by it.

It might be asked what defendant should have done that it failed to do under the conditions which existed

on the day of the accident. The answer is that it should have placed a guard or watchman upon the premises in order to see to it that the children remained away from the vicinity of the wall in the dangerous condition in which it was then standing; while the children might, of course, have evaded a watchman's vigilance defendant at least would then have done its duty and not been remiss by failing to take all reasonable measures to prevent their being injured. Or, in the alternative, it should, after the rain had ceased, have immediately torn down the remainder of the wall instead of leaving it in its dangerous condition until the following morning when it did complete the work of demolition. In *Bisson v. John B. Kelly, Inc.*, 314 Pa. 99, 170 A. 139, a sub-contractor finished the work under its own contract but knew or should have known that it was leaving the job in a condition dangerous to third persons who might be injured thereby before other sub-contractors followed on with their part of the work; it was held that this sub-contractor owed a duty to such persons to do whatever was reasonably necessary to protect them during the interim that would elapse before the other sub-contractors started in, and was accordingly liable for an accident which happened during that interval. The present makes out a stronger case of liability in that respect because here the unfinished work was to be completed by defendant itself, not by others.

The basis of liability in cases such as this rests upon the well established principle that a person in possession of land who knows that children commonly come thereon, that its condition is such as to make it peculiarly attractive to their inquisitive and playful instinct, and that their playing there is likely to be attended with danger, must take all reasonable measures to avoid resulting injury to such children: *Reichvalder v. Borough of Taylor*, 322 Pa. 72, 185 A. 270; *Bonczek v. Philadelphia*, 338 Pa. 484, 13 A. 2d 414; *Thompson v. Reading Com-*

*pany*, 343 Pa. 585, 23 A. 2d 729; *Allen, Administrator, v. Silverman*, 355 Pa. 471, 50 A. 2d 275.

If the three boys on the wall had been hacking at it in its weakened condition, and had thus been partly instrumental in bringing it down, a grave question as to defendant's liability might have arisen; cf. *Guilmartin v. Philadelphia*, 201 Pa. 518, 51 A. 312; defendant offered some testimony that this is what took place but the boys themselves denied it and testified that they merely kicked down some of the loose bricks; as all they did was to run along the top of the wall, and this, according to the expert witness, had no causal connection whatever with the happening of the accident, the question does not arise here of any intervening agency superseding the negligence of defendant.

Defendant would have had the court declare young Patterson guilty of contributory negligence as a matter of law because of the fact that he was almost 14 years of age. It is true that the legal presumption of a child's incapacity to appreciate and avoid injury may reach a point close to that age when it becomes almost a negligible quantity, and in such cases, if the facts are settled and there can be no reasonable doubt as to the inference to be drawn, the question of contributory negligence may be determined by the court as matter of law: *Gress v. Philadelphia & Reading Ry. Company*, 228 Pa. 482, 485, 486, 77 A. 810, 811; *Braden v. Pittsburgh*, 143 Pa. Superior Ct. 427, 430, 18 A. 2d 99, 100, 101. Generally speaking, however, the care and caution required of a child is measured by his capacity to see and appreciate danger, and he is held only to such measure of discretion as is usual in those of his age and experience; this being necessarily a varying standard, the question is ordinarily one for the jury and not for the court: *Kehler v. Schwenk*, 144 Pa. 348, 359, 22 A. 910, 912; *Parker v. Washington Electric Street Ry. Co. (No. 1)*, 207 Pa. 438, 441, 56 A. 1001, 1002. This lad could scarcely have been expected to realize that there was danger involved

in standing a few feet from a wall which was apparently safe; while extremely dangerous, perhaps, in the judgment of a professional wrecker, it was not apt to be recognized as such by even an *adult* layman. Nor can a charge of contributory negligence be properly directed against the boy's father. The latter testified that he had warned his son against playing in the stable while the work of demolition was going on, and he could not have been expected to take other precautions to keep him away. As was said in *Martinez v. Pinkasiewicz*, 118 Pa. Superior Ct. 200, 204, 180 A. 153, 156: "Anyone who is familiar with the habits of a ten- [here thirteen] year-old boy must know that parents can neither pen them in the house nor control all their movements when they associate with companions of the same age."

As for plaintiffs' motions for a new trial, the court below pointed out that, while the verdicts were not large considering the gravity of the injuries, the boy had had a remarkable recovery and was now gainfully employed in a part-time job. Aside from this, however, it is not unlikely that the jury encountered some difficulty in arriving at a conclusion because of testimony by defendant's witnesses that the boys themselves were vigorously trying to demolish the wall by prodding it with sticks and rods and prying off the bricks; they may also have been skeptical as to the expert's opinion in regard to the cause of the collapse and may have thought that perhaps the wall was not so obviously unsafe when the workmen left the job that a charge of negligence could properly be levelled against defendant; because of such doubts the verdicts may have been the result of a compromise, and, in such cases, the evidence not being clearly preponderant, and the verdicts rendered being at least substantial, it would be "just as likely, or more likely, that the granting of a new trial would constitute an act of injustice to the defendant rather than one of justice to the plaintiff": *Carpenelli v. Scranton Bus Company*, 350 Pa. 184, 188, 38 A. 2d 44, 46.

Judgments affirmed.