413 A.2d 710

Antha BETHAY, Administratrix of the Estate of Kenneth Bethay, Deceased,

v.

PHILADELPHIA HOUSING AUTHORITY,

and

Security Elevator Company, Additional Defendant.

Appeal of PHILADELPHIA HOUSING AUTHORITY.

Superior Court of Pennsylvania.

Argued June 26, 1979.

Filed Oct. 26, 1979.

Edwin L. Scherlis, Philadelphia, for appellant.

Bruce W. Miller, Philadelphia, for Bethay, Administratrix, appellee.

Alfred J. Tagliaferri, Philadelphia, for Security Elevator Co., appellee.

Before WIEAND, ROBINSON and LOUIK, JJ.*

ROBINSON, Judge:

This is an action brought under the Wrongful Death and Survival statutes by Antha Bethay, the administratrix of the estate of her deceased son, Kenneth, against the Philadelphia Housing Authority. Mrs. Bethay alleges that her son's death resulted from the negligence of the Housing Authority in failing to exercise proper care in the operation and maintenance of the elevators at the housing project. The Housing Authority joined as an additional defendant the Security Elevator Company with whom it had a maintenance and repair contract.

The jury was given binding instructions as to the additional defendant, Security Elevator Company and returned a verdict in favor of the plaintiff for $60,000.00 against the Housing Authority—$1,000.00 in the Wrongful Death action and $59,000.00 in the Survival action. Philadelphia Housing Authority, appellant, filed post-trial motions for judgment n. o. v. and for a new trial. These motions were denied and judgment was entered on the verdict. This appeal therefrom followed.

Viewing the evidence, together with all reasonable inferences therefrom, in the light most favorable to plaintiff, the verdict-winner, as we must, the following facts appear:

* Judge OTTO P. ROBINSON of the Court of Common Pleas of Lacka-wanna County, Pennsylvania, and Judge MAURICE LOUIK of the Court of Common Pleas of Allegheny County, Pennsylvania, are sitting by designation.

The decedent, age 10, was found on the morning of March 2, 1970 lying at the bottom of an elevator shaft in the Housing Authority project. Two elevators were provided for the building, one for the odd numbered floors and one for the even numbered floors. The Bethays had lived there approximately six years prior to the accident. Mrs. Bethay, decedent's mother, testified Kenneth and his twin brother left for school about 8:15 A.M. Approximately 25 minutes later she was told Kenneth had been found at the bottom of the elevator shaft. There was no eye-witness to the accident. However, one Thomas Bruce, a member of the maintenance staff of the Housing Authority, who was called as a witness by the appellant, testified that on the day in question he had received information of children playing on top of the elevator. He went to the building, pushed the elevator button and immediately heard something fall into the shaft. Both of the elevators returned to the first floor and no one was in them. Upon hearing moans from the bottom of the shaft, he sent for the manager and together they maneuvered the elevator upward and were able to see the deceased in the bottom of the shaft.

The record is replete with evidence that for many years prior to the accident the landing doors would often be open thereby causing the elevator to become stuck or trapped either up or down the shaft; that the landing doors could be opened from the outside by placing a wire or coat hanger into the emergency keyholes situated at the top of the landing doors and then twisting the wire whereupon the doors would open and thus stop the elevator in the shaft between floors. Additionally, children were frequently observed playing on top of the elevator. They were able to get to the top by going through the emergency exit on top of the elevator cab which could be opened from the inside. There was testimony both by a janitor of the building and the Superintendent of the Housing Authority that they knew children played on the roof of the elevators and that coat hangers were used to open the landing doors; but no steps were taken to eliminate the keyholes or to place

operators on the elevators or to make use of any security guards. The Superintendent knew of these conditions from 1958 until the date of the accident.

Sil Bozzacco, an elevator consulting engineer, examined the elevator in question on March 13, 1970. In answer to a hypothetical question, he stated that in his opinion, decedent probably fell into the elevator shaft either by going through the top emergency exit panel and then fell from the roof of the elevator or assumed when he saw the landing door open that the elevator was there and entered the elevator shaft and fell to the bottom of the pit. He further testified that the emergency keyholes from floors four through sixteen could have been eliminated inasmuch as they were unnecessary and not required under the Pennsylvania Elevator Code. As to the first two floors an additional key lock or even a plate with tamper-proof screws could have been provided to make it more difficult for someone to gain access by means of a makeshift key. As a means of preventing access to the roof of the elevator, the back handrail could have been removed to make it more difficult to gain access to the top emergency exit or it could have been provided that the top emergency exit could be opened from the outside of the shaft-way only. He further testified that while the regulations of the Elevator Division of the Department of Labor and Industry require that the emergency panel have the potential to be opened from the inside as well as the outside, a waiver of this requirement could have been obtained where a hazardous condition existed.

Mr. Bozzacco further testified the danger could have been also obviated by having an operator or attendant present in each of the two elevators.

### Motion for Judgment N.O.V.

While there was no eye witness to the accident, appellant concedes that a prima facie case may be established by circumstantial evidence. *Smith v. Bell Telephone Company of Penna.*, 397 Pa. 134, 153 A.2d 477 (1959). Nor need the plaintiff's evidence be such as excludes the possibil-

ity that defendant was not negligent. The rule as enunciated in *Smith* is that it is sufficient if plaintiff produces evidence which properly may be found by the jury to justify an inference that the defendant's negligence was the proximate cause of the accident because such evidence outweighs even though it does not exclude any inference that the defendant was not negligent or that his negligence was not the proximate cause of the accident.

■ Here the testimony of appellant's own witness Bruce, who was its employee, justifies the inference that the accident was caused by the employe's act of pushing the elevator button which set in motion the elevator, despite the fact he had been informed that children were playing on top of the elevator. Immediately thereafter he heard something fall and heard moans coming from the bottom of the shaft. Thus there is convincing circumstantial evidence that decedent met his death by falling from the top of the elevator, so set in motion by Bruce.

Appellant, however, contends the evidence was insufficient to sustain the burden of proof required under § 339, Rest. of Torts 2d. This section reads as follows:

"§ 339. ARTIFICIAL CONDITIONS HIGHLY DANGEROUS TO TRESPASSING CHILDREN.

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) The place where the conditions exist is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) The condition is one of which the possessor knows or has reason to know or which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) The children, because of their youth, do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) The utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) The possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

The above quoted section of the Restatement of Torts has been adopted as the law of Pennsylvania. In order to establish liability under this section all of the five requirements thereof must be satisfied. *Jesko v. Turk*, 421 Pa. 434, 219 A.2d 591 (1966). Appellant argues that the evidence is here insufficient to satisfy the requirements of clauses (c) and (d) and therefore § 339 is inapplicable to the facts in the instant case.

As to clause (c) the issue is whether decedent who was 10 years of age should have realized the risk involved in playing on top of an elevator under the circumstances present in this case. The evidence in this case is overwhelming that for years children repeatedly used the roof of the elevator as a "playground", a fact that was generally known to the children. There is no evidence of any serious injury to any of the children before the instant fatal accident. The fact that children have repeatedly engaged in conduct similar to that which caused the accident without having sustained injury is a factor which a jury may weigh in deciding whether the risk was fully appreciated by the child. *Hyndman v. Pennsylvania R. R. Co.*, 396 Pa. 190, 152 A.2d 251 (1959).

The question of a child's appreciation of danger is ordinarily one for the jury and not the court. In *Patterson v. Palley Mfg. Co.*, 360 Pa. 259, 267, 61 A.2d 861, 865 (1948) the court stated: ". . . the care and caution required of a child is measured by his capacity to see and appreciate danger, and he is held to such measure of discretion as is usual in those of his age and experience; this being necessarily a varying standard, the question is ordinarily one for

the jury and not for the court." In *Cooper v. City of Reading*, 392 Pa. 452, 140 A.2d 792 (1958), the court cited the above quotation from *Patterson* with approval in holding that the evidence was not such as to require a declaration as a matter of law that a child, 9 years old, had either realized or should have realized the risk inherent in going out upon thin ice covering a pool. Under the circumstances here existing, the lower court properly submitted the issue as to whether plaintiff's decedent realized or should have realized the risk involved in placing himself on the roof of the elevator to the jury. The resolution of this issue was not so clear and obvious as to compel a declaration as a matter of law that decedent realized or should have realized the risk involved as though he were an adult. See *Bartelson v. Glen Alden Coal Co.*, 361 Pa. 519, 64 A.2d 846 (1949).

In respect to clause (d) the issue is whether under the facts and circumstances of the instant case the utility to appellant of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to the children involved. In *Jesko v. Turk* (supra), this clause was construed as requiring a weighing of the interests involved—the cost of "child proofing" versus the danger of harm to children.

In the instant case, the expert testimony of Sil Bozzacco to which we earlier referred indicates that the danger of harm to children could have been eliminated or at least greatly reduced at a minimal burden to appellant by measures other than providing an elevator operator or attendant for each of the two elevators. We need not here decide whether the employment of elevator operators would have imposed upon appellant such an unreasonably costly burden as compared with the risk involved that the requirements of clause (d) have not as a matter of law been met, inasmuch as there was available to appellant alternative precautionary measures not unreasonably costly or burdensome. In *Hyndman v. Pennsylvania Railroad Co.* (supra) testimony was introduced by defendant as to the great cost of the alternative precautions suggested by plaintiff and it argued that

the cost was not slight as compared to the risk involved to trespassing children. The court in ruling that the cost of the alternative precautionary measures suggested by plaintiff's evidence were not prohibitive stated: "It is not for this court to say which of the safeguards the appellant should have taken. Suffice to say that insofar as the only precaution which the railroad took proved to be totally inadequate for the purpose, something more should have been done." 396 Pa. at 199, 152 A.2d at 256.

■ In the instant case, the appellant having taken no significant precautionary measures whatever, it was for the jury to determine whether the alternative safeguards suggested by plaintiff's evidence should have been taken. This issue was properly submitted to the jury by the lower court and it was not required to rule as a matter of law that the requirements of clause (d) had not been met.

## MOTION FOR A NEW TRIAL

■ Appellant contends the lower court erred in refusing its request to instruct the jury that decedent, even though a minor could be considered a trespasser if he improperly entered a particular part of the elevator shaft-way and that if he was a trespasser at the time of the accident, Philadelphia Housing Authority had no duty of care except to abstain from inflicting intentional, wanton or wilful injury on him. It is true that although a person may be invited or permitted to enter and remain on a particular part of a building, he may become a trespasser if he enters another part of the building, which he obviously should not enter. *Dumanski v. Erie*, 348 Pa. 505, 34 A.2d 508 (1943).

■ However, even assuming decedent was a trespasser, the imposition of liability under § 339, (a) Rest.Torts 2d presupposes that the children are trespassers and it is expressly provided that a possessor is liable for harm to trespassing children if he "knows or has reason to know that children are likely to trespass." As to such trespassing children, the duty of the possessor is not merely to abstain

from inflicting wanton injury but "*to exercise reasonable care to eliminate the danger or otherwise to protect the children.*" § 339(e) (emphasis added). The very cases cited by appellant in support of its contention, viz.; *Pietros v. Hecla Coal Co.*, 118 Pa.Super. 453, 180 A. 119 (1935); *Hojecki v. Philadelphia Reading R. R.*, 283 Pa. 444, 129 A. 327 (1925) recognize and draw the clear distinction between a situation in which the possessor has actual notice that his property has been used by children as a "playground" for a long period of time in which case there is a duty of using ordinary and reasonable care for the safety of children, and a situation in which the possessor is not chargeable with notice because such use was not sufficiently frequent or continuous in which case there is merely a duty to refrain from wilful or wanton conduct.

In the instant case, the evidence shows that appellant had for years prior to the accident tolerated the trespassing of children on the roof of its two elevators and therefore was chargeable with notice of their trespassing thereon.

Moreover, on the very day of the accident, its maintenance employee admittedly had notice of the likely presence of someone on the roof of the elevator at the very moment he pushed the elevator button to return it to the first floor. Having such notice it was its duty to exercise reasonable care to protect any such trespassing child from injury and not merely to refrain from any act of wilful or wanton negligence. Even when the circumstances are such that the *likely* presence of a trespasser is foreseeable, the duty of care to avoid injury to him arises. *Frederick v. Phila. Rapid Transit Company*, 337 Pa. 136, 10 A.2d 576 (1943). Since under the evidence, the standard of care here applicable was that of reasonable care, the lower court did not err in refusing to charge that appellant had no duty of care except to abstain from a wilful or wanton act of negligence.

Appellant next contends the trial judge erred in refusing to instruct the jury that a person approaching an elevator shaft is "charged with the duty of seeing whether or not the

elevator door is open when the elevator door is not at the floor" and "if he walks into an open area because he assumes the elevator is at the floor he is at law guilty of negligence and cannot recover." Appellant argues that since the plaintiff's expert, Sil Bozzacco testified that the child's death could have also been caused by falling to the bottom of the elevator shaft after walking through an open door, the instruction as above requested should have been given.

The giving of such an instruction would be in effect a direction to find decedent contributorily negligent as a matter of law under the circumstances embraced therein. Assuming arguendo, such an instruction would be proper in the case of an adult, in the instant case plaintiff's decedent was a ten year old child who was, in addition, entitled to the presumption that he exercised due care. A minor between the ages of seven and fourteen is presumed incapable of negligence but such presumption is rebuttable and becomes weaker as he comes closer to that age and the question of his negligence is ordinarily one for the jury and not the court. *Patterson v. Palley Mfg. Co.* (supra); *Masters v. Alexander*, 424 Pa. 65, 225 A.2d 905 (1967). In addition, a decedent is presumed to have exercised due care for his safety and a finding as a matter of law that he was contributorily negligent requires evidence so clear, direct and positive as to preclude any difference in the minds of fair and reasonable men with regard to it. *Skoda v. West Penn Power Co.*, 411 Pa. 323, 191 A.2d 822 (1963). A decedent may not be held contributorily negligent as a matter of law unless the *only* reasonable inference arising from the evidence shows a want of due care. *McNett v. Briggs*, 217 Pa.Super. 322, 272 A.2d 202 (1970). The presumption of due care is enough in itself to negate contributory negligence unless it is overcome by substantive evidence. *Keasey v. Pittsburgh & Lake Erie Railroad Company*, 404 Pa. 63, 170 A.2d 328 (1961).

Assuming (although there is no evidence thereof) that the elevator door was open, the open elevator door

would have constituted an invitation to decedent to enter the elevator which he mistakenly assumed to be in place. A ten year old child is not bound to the same degree of attentiveness as that expected of an adult. His conduct cannot be judged by adult standards. We cannot characterize such a mistake as being so clearly and obviously negligent that fair and reasonable men might not differ therefrom; nor that such an inference is the only reasonable inference to be drawn therefrom. The lower court committed no error in refusing appellant's requested instructions and properly submitted the issue of decedent's contributory negligence to the jury for determination.

Appellant next contends the lower court erred in permitting plaintiff's actuary to utilize a 4% growth or productivity factor in calculating the projected future loss of earnings of decedent. It is true that this court held in *Havens v. Tonner*, 243 Pa.Super. 371, 365 A.2d 1271 (1976) that the use of such a "productivity factor" was simply a substitute for inflation and therefore speculative and inadmissible. However in *Schneider v. Albert-Einstein Medical Center*, 257 Pa.Super. 348, 390 A.2d 1271 (1978) this court held that although the trial court erred in permitting plaintiff to introduce evidence that inflationary factors could be expected to result in a 6% annual increase in the cost of future medical services required for the rest of plaintiff's life, the error was harmless in light of the fact that the jury's award of $1,000,000.00 was not excessive or otherwise unreasonable inasmuch as the sum awarded was less than the amount "proved" to be due as compensatory damages. It was further pertinently noted in *Schneider* that no claim was made by appellant that the award was excessive but merely that the introduction of the inflationary factor was in error. In the instant case, the aggregate projected lifetime earnings of decedent as reduced by the cost of his maintenance was $419,000 which sum reduced to present value was $166,000. Thus the jury's verdict of $59,000 under the Survival Action was so far below the amount "proved" that the improperly admitted "productivity factor" was

harmless. It is also noted that appellant in its motion for a new trial raised no issue as to the excessiveness of the verdict as such but merely that the introduction into evidence of the productivity factor was in error.

### The Direction of the Verdict in Favor of Security Elevator Company

Appellant contends the lower court erred in directing a verdict in favor of the additional defendant, Security Elevator Company. Appellant argues Security Elevator Company is liable by virtue of its agreement with the Housing Authority to service and maintain the elevators in proper operable condition. The cases cited by appellant in support of its contention are inapposite to the factual situation here existing.

In *Johnson v. Otis Elevator Company,* 225 Pa.Super. 500, 311 A.2d 656 (1973) it was held that the manufacturer of an elevator which had entered into a contract to service and maintain the elevator for the owner was liable for injury sustained by it when the door of the fully automated elevator which he was about to enter came into contact with his body and a bolt of electricity emanated from the doors electric eye mechanism. Thus the injury was caused by a malfunction or defective condition of the mechanism of the elevator. Likewise in *Evans v. Otis Elevator Co.,* 403 Pa. 13, 168 A.2d 573 (1961) the negligence of the service and maintenance contractor consisted in its failure to detect and correct a defective condition in the elevator which was ascertainable upon reasonable inspection. In the instant case, there is no evidence whatsoever that at the time of the accident the elevator was defective or malfunctioned so as to render it unsafe or pose a danger to persons using it in the manner and for the purpose for which it was intended. Indeed, the uncontradicted evidence was that the elevator system was free of defects and that Security Elevator Company at all times maintained them in proper operable condition. Since there was no evidence from which the jury could properly find that the death of plaintiff's decedent was caused by any

breach of duty on the part of Security Elevator Company, the directed verdict was proper. The service and maintenance agreement contained no provision obligating Security Elevator Co. to police or otherwise guard against an improper use of the elevator by trespassing children or anybody else. To impose such a duty would be an unwarranted extension of the rule applied in *Johnson* and *Evans*.

 Appellant further contends the trial judge erred in granting binding instructions in favor of the additional defendant after the final arguments of counsel for the parties. The timing of the direction by the trial judge of a directed verdict is within his discretion and his failure to rule on a point for binding instructions prior to closing arguments of counsel is not reversible error. *Kopar v. Mamone*, 419 Pa. 601, 215 A.2d 641 (1966). A verdict may be directed at any time before the jury's verdict is received. 6 Standard Penna. Practice, Ch. 25, § 104. The lower court committed no reversible error in so directing the verdict.

Affirmed.