456 A.2d 151

**Anthony BERSANI, Jr., a minor, by his parent and natural guardian, Anthony BERSANI, Appellant,**

v.

**SCHOOL DISTRICT ·OF PHILADELPHIA.**

Superior Court of Pennsylvania.

Argued June 22, 1982.

Filed Dec. 23, 1982.

Reargument Denied March 4, 1983.

Petition for Allowance of Appeal Denied June 15, 1983.

2 

Joanne E. Kleiner, Philadelphia, for appellant.

James M. Marsh, Philadelphia, for appellee.

Before WICKERSHAM, McEWEN and LIPEZ, JJ.

WICKERSHAM, Judge:

This is an appeal from a lower court order granting a motion for summary judgment in favor of appellee School District of Philadelphia (hereinafter the School District).[1] Appellants Anthony Bersani, Jr., and his father (hereinafter Bersani) filed a complaint in trespass on July 27, 1977. The School District answered on August 10, 1977. Discovery was then begun but not completed. On December 27, 1978, the School District filed a motion for summary judgment, which was denied on March 1, 1979.

On July 5, 1979, the lower court granted Bersani leave to amend his complaint. Two amended complaints were subsequently filed, one on July 12, 1979, and the other on August 22, 1979. More discovery and pleadings followed. On April 10, 1981, the lower court granted a second motion for summary judgment by the School District. This appeal followed.

The pertinent facts are as follows. On the evening of May 3, 1977, Anthony Bersani, Jr., age nine, was playing softball in the schoolyard of the Vare Junior High School in Philadelphia. The game was not an organized school activity; each player supplied his own equipment. Bersani

---

1. An order that terminates the litigation between the parties is final and, therefore, appealable. *Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 383 A.2d 791 (1977).

 An order granting summary judgment in favor of the School District of Philadelphia was issued on April 10, 1981. Appellant Bersani filed his notice of appeal on May 4, 1981, twenty-four days later. This appeal is timely and proper.

played the position of catcher during the game. At one point as Bersani crouched near home plate the batter swung at a pitch and accidentally struck him in the head with the bat. Bersani suffered a fractured skull, seizures, and other injuries as a result of the blow.

Bersani contends that the painted marking which served as home plate at the playground was positioned too closely to the fence of the schoolyard to allow enough room for a catcher to position himself safely behind home plate. The diamond and home plate were positioned for the game of pimpleball, which is played under rules similar to baseball except that no bats are used; the ball used is of a balloon type and it is struck by the offensive player's hand rather than by a bat. Because no bat is used in pimpleball, less room is needed behind home plate than in softball or baseball.

Bersani frames the first question involved as follows:

> Was [the] lower court which granted Defendant's motion for summary judgment bound by principles of Res Judicata and Rule of the Case?

Brief for Appellant at 7.

Bersani points out that while the lower court granted a motion for summary judgment in favor of the School District on April 10, 1981, a prior motion for summary judgment by the School District had been denied by a different lower court judge on March 1, 1979.

▪ Absent some new evidence, it is improper for a trial judge to overrule an interlocutory order by another judge of the same court in the same case. *Commonwealth v. Eck*, 272 Pa.Super. 406, 416 A.2d 520 (1979). See also Justice Roberts' opinion in *Commonwealth v. DeMichel*, 442 Pa. 553, 277 A.2d 159 (1971) (trial judge may overrule suppression judge based on new evidence).

Here, during the period between the two rulings of the lower court on the motions for summary judgment, Bersani filed two amended complaints; several interrogatories were filed and answered and many other docket entries were

made. Bersani even averred in his answer to the first motion for summary judgment that discovery was not yet complete, that no employees of the School District had yet been deposed, that his interrogatories had not yet been answered, and that eyewitnesses to the incident had not yet been deposed. In answers to the interrogatories it was revealed that one reason the fense to the schoolyard was never closed was in order to allow easy access in the event of an emergency and that the markings on the schoolyard were for a game other than baseball among many other facts. The action of the second lower court judge in considering a second motion for summary judgment, even though the prior motion had been denied, is justified by the large amount of new information added to the record in the time period between the two motions.

Bersani phrases the next two issues as follows:

Did Defendant owe an affirmative duty of care to Plaintiff?

Did Defendant breach its duty of care owed to Plaintiff?

Brief for Appellant at 7.

Bersani argues that he was struck in the head by the batter as he played catcher because the School District had placed the painted marking that served as home plate too close to a backing fence: there was too little room for both players in the area of home plate and the resultant crowding led to the batter swinging at pitches near the catcher's head. The painted diamond and home plate were placed there several years before for the game of pimpleball, which was rarely played by the time of Bersani's accident. In pimpleball less room is needed in the area of home plate than is necessary in softball. Bersani contends that the School District should have realized that children would use the pimpleball diamond for softball games and, therefore, it should have placed home plate so as to allow them to play softball safely or taken steps to warn them of the potentially hazardous overcrowding around home plate.

■ Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. No. 1035(b). Summary judgment is to be granted only in the clearest of cases; all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979). In passing on a motion for summary judgment the lower court must examine the record in the light most favorable to the non-moving party. *Hankin v. Mintz*, 276 Pa.Super. 538, 419 A.2d 588 (1980).

■ Here, the lower court found that Bersani was a public invitee. Section 332 of the Restatement (Second) of Torts (1965) (cited with approval in *Atkins v. Urban Redevelopment Authority of Pittsburgh*, 489 Pa. 344, 351 n. 2, 414 A.2d 100, 103 n. 2 (1980)), states, in pertinent part: "A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public." There is evidence on the record before us that Bersani was an invitee at the playground, including a statement in the School District's second motion for summary judgment that, "[t]he gates to the schoolyard were left open pursuant to a long standing policy of the School District to allow access to the school yard by children in the neighborhood." Reproduced Record at 12. Viewing the record in the light most favorable to the non-moving party, the lower court's finding that Bersani was a public invitee is supported.[2]

2. The School District argues that Bersani's status as a child at the playground rose no higher than that of a licensee. The duty of inspection is what distinguishes the obligation owed by a possessor of land to invitees from the obligation owed to licensees. Restatement (Second) of Torts § 343 comment b (1965), see also *Treadway v. Ebert Motor Company*, 292 Pa.Super. 41, 49, 436 A.2d 994, 998 (1981) (duty to inspect distinguishes obligation owed by possessor of land to business visitors from that owed to licensees). As Bersani alleges that the School District created the dangerous condition considered here

In *Atkins v. Urban Redevelopment Authority of Pittsburgh, supra,* the Supreme Court of Pennsylvania adopted section 343 of the Restatement (Second) of Torts (1965), which was quoted as follows:

Dangerous Conditions Known to or Discoverable by Possessor

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land *if, but only if,* he (a) knows or by the exercise of reasonable care would discover the condition and *should realize that it involves an unreasonable risk of harm to such invitees, and*

*(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it,* and

(c) fails to exercise reasonable care to protect them against the danger. (emphasis added).

489 Pa. at 351, 414 A.2d at 103–04 (footnote omitted). The Pennsylvania Supreme Court went on to note that:

It is clear from this section, and the comments thereto, that liability depends not simply on the status of the injured party (e.g., 'licensee' v. 'invitee'), but on many variables. Major variables include *the purposes of the invitation,* the obviousness of the danger, the likelihood that the invitee will realize the danger and will take steps to protect himself, the nature of the land and the purposes for which it is used.

489 Pa. at 351–52, 414 A.2d at 104 (footnotes omitted).

Mr. George Fieo, the principal of Vare Junior High School, testified during a deposition that the bases for the pimpleball game had been painted on the playground several years before Bersani's accident. The School District was certainly aware that home plate was close to its backing fence as it had created the condition.

and, therefore, had knowledge of it, the duty of the possessor to inspect for dangerous conditions is irrelevant to our analysis. Bersani's status, as between an invitee and a licensee, is not, therefore, crucial to our analysis either.

In considering whether the School District should have realized that the condition involved an unreasonable risk of harm to the young softball players, we note that School District employees were aware that children played softball and hardball on the schoolyard if for no other reason than that errant balls occasionally broke windows in the school (Deposition of Ranieri at 11). Any reasonable adult would realize the danger resulting from a bat being swung in close proximity to a child's head. Viewing the evidence in the light most favorable to Bersani, the non-moving party, it can be concluded that the School District should have realized that the crowded conditions around home plate, caused by a too-close backing fence, involved an unreasonable risk of harm to young children who might lack a full appreciation of the potential danger.

Whether nine-year old Bersani should have realized the danger is our next question. The Supreme Court of Pennsylvania stated in *Cooper v. City of Reading*, 392 Pa. 452, 140 A.2d 792 (1958):

> Generally speaking, however, the care and caution required of a child is measured by his capacity to see and appreciate danger, and he is held only to such measure of discretion as is usual in those of his age and experience; this being necessarily a varying standard, the question is ordinarily one for the jury and not for the court.

*Id.*, 392 Pa. at 464, 140 A.2d at 798. *See also Bethay v. Philadelphia Housing Authority*, 271 Pa.Super. 366, 413 A.2d 710 (1979) (whether ten-year old appreciated danger of playing on top of elevator is for jury, not court, to decide).

The danger involved here was not such an obvious one that we can hold as a matter of law that Bersani should have been able to appreciate it and so avoid the accident. While the Pennsylvania Supreme Court has found that the danger of falling from a height should be recognized even by a child, see *McHugh v. Reading Company*, 346 Pa. 266, 30 A.2d 122 (1943), the court has also held that the danger of crossing a deceptively deep pool of water on thin ice is not such an obvious danger that a nine-year old can be held, as a matter of law, to appreciate it. *Cooper v. City of*

*Reading, supra.* We find the present situation to be more closely analagous to the circumstances presented in *Cooper* and *Bethay* than to those in *McHugh.* Bersani would have had to appreciate both that the crowded condition around home plate would have resulted in the batter swinging the bat closer to the catcher's head *and* that this would increase his chances of being struck in order to appreciate the danger, an analysis much more complex than that required of a child in *McHugh.*

Bersani has alleged that the School District failed to exercise reasonable care to protect him from the danger resulting from the close backing fence by failing "to warn minor children of the inherent dangers of playing baseball without adequate facilities...." Reproduced Record at 4. An examination of the record in the light most favorable to Bersani reveals that he has presented some evidence so as to satisfy the requirements of each element of section 343 of the Restatement (Second) of Torts (1965). We cannot, therefore, state as a matter of law that the School District is entitled to summary judgment.

■ We note, finally, that our decision to reverse the lower court order granting summary judgment does not leave the School District with "no alternative but to close down all its school yards and playgrounds after school hours" as is argued in the Brief for Appellee at 17. We hold only that the School District is not entitled to summary judgment and not that the owner of a playground is unfailingly liable for injuries incurred by children playing there.[3]

Order granting summary judgment reversed and case remanded for proceedings consistent with this opinion.

LIPEZ, J., filed a dissenting statement.

**3.** Bersani phrases his remaining issues as follows:
> Did nine year old Plaintiff assume risk of injury by participating in an unsupervised ball game on Defendant premises?
> Would finding of liability against Defendant impose an unreasonable burden upon Defendant?

Brief for Appellant at 7.

Because of our disposition of this case, we need not address these issues.

LIPEZ, Judge, dissenting:

I dissent. In my judgment, there is lacking the requisite dangerous condition of the land to impose liability.