Windber Area Authority, Appellant *v.* William A. Rullo and Helen E. Rullo, his wife, trading as Norge Laundry Village, Appellees.

Argued May 5, 1978, before Judges Mencer, Rogers and DiSalle, sitting as a panel of three.

*Joseph N. Cascio,* with him *Fike, Cascio & Boose,* P.A., for appellant.

*Samuel D. Clapper,* with him *Nathaniel A. Barbera,* and *Barbera and Barbera,* for appellees.

OPINION BY JUDGE DISALLE, June 15, 1978:

The Windber Area Authority (Authority) filed a Complaint in Assumpsit in the Court of Common Pleas of Somerset County against William and Helen Rullo (Appellees), trading as Norge Laundry Village, for monies allegedly due the Authority for water and sewage service supplied by the Authority to the Appellees. From an award of a Board of Arbitrators, dated July 12, 1974, in favor of the Authority, the Appellees appealed to the court below. Thereafter, they filed a Motion for Summary Judgment which was granted by Order dated January 20, 1977.[1] The Authority filed Exceptions to this Order, which the Court en Banc dismissed by Order dated August 25, 1977. This appeal followed.

On November 15, 1970, pursuant to the powers granted under Section 4 of the Municipality Authorities Act of 1945, Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. §306, the Authority entered into a water service agreement with the municipalities it served, including the Borough of Windber, where the Appellees operate their laundry and car wash business.[2] This agreement provides, *inter alia*:

---

[1] The Order of January 20, 1977, erroneously read "defendant's motion for Judgment on the Pleadings is allowed. . . ." By its Order of August 25, 1977, the prior order was amended to read "defendant's motion for Summary Judgment is allowed. . . ."

[2] A similar agreement was entered into between the Authority, then known as The Windber Area Joint Sanitary Authority, and the serviced municipalities on November 1, 1970, concerning sewage transportation and treatment rates. Since the language of the regulation claimed by the Authority to have been clarified by the reso-

At least sixty (60) days before any revised schedule of water supply and distribution rates, rents and charges shall become effective, the Authority shall submit in writing to the Municipalities a statement setting forth the new schedule of water supply and distribution rates, rents and charges. Such new schedule of charges shall go into effect at the time specified in said statement; not earlier, however, than sixty (60) days from the furnishing of such statement, unless suspended by a decree of a court of competent jurisdiction.

Thereafter, on December 8, 1971, the Authority passed a resolution which states in pertinent part:

WHEREAS, some of the customers of this Authority for either/or water and sewer service or both maintain multi-unit residential, commercial or industrial accommodations, subject to water and/or sewer charges; and,

WHEREAS, some of the multi-unit customers as hereinabove defined, serve all units through one meter for water; and

WHEREAS, this Board deems it necessary to adopt a policy for usage charges including minimum rates for such multi-unit customers, either residential, commercial or industrial:

Now, THEREFORE, BE IT RESOLVED, and it is hereby resolved, that the rates chargeable to multi-unit customers, residential, commercial or industrial, for water and sewer service where there is only one meter, which is the basis for charge, shall be as follows:

A. Each of the units in the multi-unit facility shall be required to pay the

lution applies only to the water system, and not the sewage system, we determine that sewage rates could not have been affected by the resolution.

appropriate minimum charge for water and sewer per schedule of charges adopted by this Authority;

B. The owner of the multi-unit facility as above defined shall be billed on the basis of the total number of units served by the single meter times the charge per unit based on the equal pro rata share of the total gallonage as shown on the meter.

BE IT FURTHER RESOLVED, that the owner of a multi-unit facility shall be responsible for keeping the Authority informed as to the number of users in the multi-unit facility and in the event the owner fails to do so, when the Authority receives knowledge of any additional units being used than that for which it is billed, the Authority shall effect a charge to the owner of the facility for the period extending from the time of such use until the time of knowledge gained by the Authority of the additional usage.

The Authority admits that there was no notice to their customers or to the municipalities before the resolution became effective. After this resolution was adopted, the Appellees were charged "multi-unit" rates for the water and sewage services provided to them. They refused to make payment based on the "multi-unit" rates but did make full payment in accordance with the previous rate schedule.

Appellees argued in the court below, as they do here, that their refusal to remit the difference between the "multi-unit" rates and the previous rate schedule was justifiable since, in adopting the resolution, the Authority effectuated a rate change, but failed to comply with the requirements of the agreement of November 15, 1970. The Authority denied that the resolution amounted to the establishment of new rates, and

argued that it merely clarified the application of existing rules and regulations. The lower court, concluding that there was no genuine issue of material fact, determined that the effect of the resolution was a matter of law appropriate for the exercise of summary judgment. It held that the resolution constituted a rate change which must fall as being in violation of the service agreement.

Summary judgment may be rendered pursuant to Pa. R.C.P. No. 1035. In viewing the record in the light most favorable to the nonmoving party, we must accept as true all well pleaded facts in the nonmoving party's pleadings, as well as admissions on file, giving them the benefit of all reasonable inferences to be drawn therefrom. *Ritmanich v. Jonnel Enterprises, Inc.,* 219 Pa. Superior Ct. 198, 280 A.2d 570 (1971). It is well recognized that summary judgment shall not be entered unless the case is clear and free from doubt, and that all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Davis v. Pennzoil Co.,* 438 Pa. 194, 264 A.2d 597 (1970); *J. Berman & Sons, Inc. v. Pennsylvania Department of Transportation,* 21 Pa. Commonwealth Ct. 317, 345 A.2d 303 (1975). The moving party must, of course, prove that there is no genuine issue of fact to be tried. *Schacter v. Albert,* 212 Pa. Superior Ct. 58, 239 A.2d 841 (1968).

The Authority argues that the lower court improperly invoked summary judgment since a genuine issue of material fact presently exists. Specifically, it is argued that a determination must be made as to whether the resolution was a clarification of the rules and regulations of the Authority. The regulation claimed to have been clarified reads as follows:

Metered service contemplates the supply of water through an individual service line and meter to each and every *occupant* of the prem-

ises supplied. Where the premises are not adapted for such separate meter installations in the judgment of the Authority, one common service line will be permitted and one meter installation will be made accordingly; however, the charge for service will be made on the same basis as if an individual meter were installed for each and every *occupant* of the premises. (Emphasis added.)

The term "occupant" in this regulation was allegedly clarified so as to mean an "occupied building." However, the pleadings fail to allege that there was more than one occupant of Appellees' premises, or that there was more than one occupied building.

While it is true that a fact is material if it directly affects the disposition of the case, *Ryan v. Furey*, 437 Pa. 96, 262 A.2d 305 (1970), in the instant case there are no unresolved factual issues. The express language of the resolution is clear. The Authority passed the resolution in order "to *adopt* a policy for usage charges including minimum rates for such multi-unit customers, either residential, commercial or industrial." (Emphasis added.) The Authority then resolved "that the *rates chargeable* to *multi-unit customers* . . . for water and sewer service where there is only one meter, which is the basis for the charge, shall be as follows." (Emphasis added.) In adopting a policy which provided that "the rates . . . shall be" as therein stated, it is clear the Authority was not merely explaining an already existing rate schedule, but was promulgating a new one.[3] Even though the new rates were based on a multiple of the existing rate schedule, the effect of the resolution was to create a new category of cus-

---

[3] We note that the agreement of November 15, 1970, refers only to "revision" of rates, and not necessarily to an increase in rates. Conceivably then, any revised schedule would require the 60 day notice, whether rates were increased or not.

tomers which were to be charged a new rate. The effect of the resolution was properly a question of law for the court below.[4] Since the procedures for establishing a revised rate schedule were admittedly not complied with, the resolution is invalid.

Accordingly, we affirm.

### ORDER

AND Now, this 15th day of June, 1978, the order of the Court of Common Pleas of Somerset County, dated January 30, 1977, is hereby affirmed.

---

[4] In light of our decision here, we need not address Appellees' alternative argument that the resolution, in using the term "multi-unit" without defining the same, was too vague and indefinite to form a basis upon which a jury could be instructed to determine whether Appellees operated a multi-unit establishment.