Clara Allen et al., Petitioners *v.* Aldo Colautti, Secretary of Public Welfare, Department of Public Welfare, Commonwealth of Pennsylvania et al., Respondents. Southeastern Pennsylvania Mental Health Association, Inc., Intervening Party Petitioner.

Argued June 4, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., ROGERS, BLATT, CRAIG, MACPHAIL and WILLIAMS, JR. Judge MENCER did not participate.

*O. Randolph Bragg,* with him *Elias S. Cohen,* for petitioners.

*Allen C. Warshaw,* Deputy Attorney General, Chief, Civil Litigation, with him *Joseph L. McCann,* Deputy Attorney General, and *Harvey Bartle, III,* Acting Attorney General, for respondents.

*Mark Spiegel,* for intervening party petitioner.

OPINION BY JUDGE MACPHAIL, August 7, 1980:

This case comes before us pursuant to our original jurisdiction, Section 761(a)(1) of the Judicial Code, 42 Pa. C. S. §761(a)(1), for determination of a motion for summary judgment filed by Petitioners. Petitioners in this action are two individuals[1] who are residents or former residents of personal care homes[2] within the Commonwealth and three individuals and the Pennsylvania Association of Older Persons, Inc. who assert "a direct and substantial interest in the rights, safety and health of elderly citizens in the Commonwealth including those who reside in nursing homes and personal care homes, and in the integrity and propriety of expenditures of state funds." Respondents are Helen O'Bannon, Secretary of the Department of Public Welfare (DPW); Arnold Muller, Secretary of the Department of Health (DOH), and Shirley Laughman, the alleged proprietor of a personal care home for adults.[3] The Southeastern Pennsylvania Mental Health

---

[1] One of the named Petitioners, Clara Allen, passed away subsequent to the initiation of this action.

[2] "Personal care homes for adults" is defined in Section 1001 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §1001, as

> any premises operated for profit in which food, shelter and personal assistance or supervision are provided for a period exceeding twenty-four hours for more than two adults who are not relatives of the operator and who require assistance or supervision in such matters as dressing, bathing, diet or medication prescribed for self administration.

This section has been suspended in part by Section 3 of Reorganization Plan No. 2 of 1973, *see* 71 P.S. §755-2, and repealed in part by Section 13(b) of the Act of June 20, 1978, P.L. 477, the act establishing the Department of Aging. Neither the suspension nor the repeal affects the definition of personal care home for adults.

[3] The complaint in this matter was filed originally against Laughman and the predecessors of Secretary O'Bannon and

Association, Inc. (Association) was granted leave to intervene in this case.[4]

In their petition for review, Petitioners alleged that DPW and DOH, through their Secretaries and the Secretaries' subordinates have a legal duty to inspect, license, and regulate personal care homes and to maintain actions to enjoin the operation of unlicensed personal care homes. *See,* Generally, Sections 901 *et seq.* and 1001 *et seq.* of the Public Welfare Code (Code), Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §§901 *et seq.* and 1001 *et seq.*, and Reorganization Plan No. 3 of 1975, 71 P.S. §756-3. Petitioners alleged further that the Secretaries, *inter alia,* failed to issue rules and regulations or to otherwise provide for the licensing and regulating of personal care homes and failed to comply with federal requirements pursuant to Title XX of the Social Security Act, 42 U.S.C. §1397 *et seq.*, in submitting the "Pennsylvania State Plan" to federal authorities.[5] Petitioners alleged that Respondent

---

Secretary Muller, Aldo Colautti and Leonard Bachman, respectively. All of the relief Petitioners seek in their motion for summary judgment is directed at Secretaries O'Bannon and Muller and their subordinates. No direct relief is sought against Respondent Laughman. She has not appeared in any of the proceedings in this matter. In the context of this opinion, we will refer to Respondent Laughman by name and to Respondents O'Bannon and Muller by the titles "Respondents" or "Secretaries."

[4] The Association filed a petition for review and a brief in support of Petitioners' motion for summary judgment. It did not file a separate motion on its own.

[5] The state plan is a report required by the federal government of those states receiving federal financial assistance pursuant to Title XX. The state agency responsible for filing the plan (in Pennsylvania, DPW) must include in the plan information concerning the regulation of residential facilities which house large numbers of Supplemental Security Income (SSI) recipients. Petitioners alleged that many Pennsylvania SSI recipients reside in personal care homes and that by omitting reference to such homes from the state plan it submitted to the Department of Health, Education and Welfare

Laughman was the proprietor of an unlicensed personal care home for adults and that she failed to provide or to allow others to provide necessary medical care to the home's residents. Petitioners alleged that at least two residents of Respondent Laughman's home contracted gangrene due to bedsores. One, Clara Allen, suffered the amputation of both legs and the other, Edna Treaster, died before the gangrene could be treated effectively.

Following the closing of pleadings and the filing of Respondent Secretaries' answers to Petitioners' interrogatories, Petitioners filed the instant motion for summary judgment pursuant to Pa. R.C.P. No. 1035. They seek (1) declaratory relief stating that the Secretaries of DPW and DOH have the duty and responsibility to inspect, supervise, and/or license personal care homes for adults and to enjoin their illegal operation, (2)(a) injunctive relief restraining the Secretaries from refusing to perform said inspection, licensing, and regulation and requiring them to perform such duties[6] of (b) relief in the form of mandamus requiring them to perform the alleged duties, (3) an order directing the Secretaries to develop a cooperative plan to assure licensure and regulation of personal care homes, and (4) an order directing the Secretary of DPW to file an amendment to the DPW Title XX Comprehensive Annual Program Plan for 1978-79. Respondents filed a response to Petitioners' motion for summary judgment stating that DPW has recently adopted regulations for personal care boarding homes which became effective on June 19, 1980. *See*

---

(now the Department of Health and Human Services) the Secretary jeopardized Pennsylvania's entitlement to Title XX funds.

[6] Petitioners were very specific in their request for relief even to the point of establishing a time table of dates by which they desire DPW and DOH to take certain actions. We need not detail those specific acts and dates here.

10 Pa. B. 1678. Respondents appear to argue that they believe such action renders moot the issues raised by Petitioners. We disagree with Respondents as to the question of mootness, but we also are unable to grant the relief requested by Petitioners.

Our Courts have held consistently that cases will not be dismissed as moot where they concern questions of a recurring nature, capable of avoiding review, and of important public interest. *Temple University of the Commonwealth System of Higher Education v. Department of Public Welfare*, 30 Pa. Commonwealth Ct. 595, 600, 374 A.2d 991, 995 (1977). Nor will a case be dismissed as moot merely because alleged illegal conduct has been stopped voluntarily. *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953). In determining whether the cessation of such activity compels a finding of mootness, we must consider (1) the good faith of the defendant's announced intention to discontinue the challenged activity, (2) the effectiveness of the discontinuance, and (3) the character of the past violation. *Id.* at 633; *Rhodes v. Weinberger*, 388 F. Supp. 437, 440 (E.D. Pa. 1975). The defendant bears the heavy burden of proving that there is no reasonable expectation that the past conduct will be repeated. *United States v. W. T. Grant Co.* at 633.

We find that Respondents here have not met that burden of proof. We do not question the good faith of DPW in adopting the regulations concerning personal care homes. The Association, however, has challenged the validity of the regulations. Although we decline to rule on the regulations' validity in this context, we do note that the potential challenge places their effectiveness in doubt. Furthermore, the promulgation of regulations by DPW only addresses one of the many issues raised by Petitioners. The mere adoption of the regulations, even presuming them to be valid, does not ensure that they will be implemented and enforced.

Finally, there is no question that the character of the alleged past violation of duty by Respondents is serious. *See Department of Public Welfare v. Garland*, 393 Pa. 45, 52, 142 A.2d 14, 17 (1958) in which our Supreme Court recognized the importance of the regulation of residences such as personal care homes. For all of these reasons, we hold that the matters raised by Petitioners are not moot.

Before addressing Petitioners' specific prayers for relief, we must review the general rules applicable to motions for summary judgment. The Court may enter summary judgment on motion of either party pursuant to Pa. R.C.P. No. 1035(b) where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." On a motion for summary judgment, this Court will view the record in the light most favorable to the nonmoving party. We will accept as true all well pleaded facts in the nonmoving party's pleadings and admissions on file and will give to the nonmoving party the benefit of all reasonable inferences to be drawn therefrom. We will enter summary judgment only in a case which is clear and free from doubt and all doubts as to the existence of a material fact must be resolved against the moving party. A fact is material if it directly affects the disposition of a case. *Windber Area Authority v. Rullo*, 36 Pa. Commonwealth Ct. 131, 135-36, 387 A.2d 967, 969-70 (1978). The moving party bears the burden of proving that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Summary judgment will be entered only "if appropriate," *Amabile v. Auto Kleen Car Wash*, 249 Pa. Superior Ct. 240, 245-47, 376 A.2d 247, 249-50 (1977), Pa. R.C.P. No. 1035(d),

and summary judgment would not be appropriate if the documents submitted in support of a motion for summary judgment evidenced a disputed issue as to a material fact. With these general principles in mind, we now turn to Petitioners' specific requests for relief.

Historically, our courts have held that declaratory judgment may not be entered by way of summary judgment. *Laspino v. Rizzo*, 40 Pa. Commonwealth Ct. 625, 629 n. 3, 398 A.2d 1069, 1971 n. 3 (1979); *Pennsylvania Association of State Mental Hospital Physicians v. State Employees' Retirement Board*, 31 Pa. Commonwealth Ct. 151, 154, 375 A.2d 863, 864 (1977), *aff'd*, 484 Pa. 313, 399 A.2d 93 (1979).[7] We express no opinion as to whether our previous holdings have been altered by the new rules concerning declaratory judgment actions set forth in Pa. R.C.P. No. 1601 *et seq.* Summary judgment is not appropriate in this case in any event, because, as we will discuss, *infra*, there exist in this matter genuine issues as to material facts. Petitioners err in their argument that pursuant to the Declaratory Judgments Act, 42 Pa. C. S. §7539, the existence of a question of fact does not preclude the entry of summary judgment. Section 7539 does not refer to summary judgment but rather indicates that if a question of fact does exist in a declaratory judgment action, the factual issue may be

---

[7] These decisions were reached pursuant to the Uniform Declaratory Judgments Act (UDJA), Act of June 18, 1923, P.L. 840, *as amended*, 12 P.S. §831 *et seq.* The UDJA was repealed by Section 2(a)[1063] of the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202, 42 Pa. C.S.A. §20002(a)[1063]. Similar provisions are now found in the Declaratory Judgments Act (DJA),42 Pa. C. S. §7531 *et seq.* There is nothing in the DJA which would alter the holdings of those decisions. They were based on the reasoning that declaratory judgment is a statutory action and that since there was no provision in the UDJA authorizing judgment on the pleadings, summary judgment would not be permissible. There, likewise, is no such provision in the DJA, itself.

decided by a judge or a jury as in any other civil action. *See Liberty Mutual Insurance Co. v. S.G.S. Co.*, 456 Pa. 94, 100, 318 A.2d 906, 909 (1974); *Delaware Valley Apartment House Owners' Association v. Department of Revenue*, 36 Pa. Commonwealth Ct. 615, 621-22, 389 A.2d 234, 238 (1978).[8]

Petitioners' second prayer for relief requests an order enjoining Respondents from refusing to inspect, license, and regulate personal care homes and ordering them to perform such duties. Such affirmative relief is by nature a mandatory injunction. *Roberts v. Board of Directors of the School District of the City of Scranton*, 462 Pa. 464, 470, 341 A.2d 475, 478 (1975). Petitioners seeking a mandatory injunction must present a stronger case than that required for a restraining-type injunction. They must demonstrate that they are clearly entitled to immediate relief and that they will suffer irreparable injury if relief is not granted. *Cardamone v. University of Pittsburgh*, 253 Pa. Superior Ct. 65, 71, 384 A.2d 1228, 1232 (1978); *see also, Rodes v. Commonwealth*, 2 Pa. Commonwealth Ct. 328, 330, 279 A.2d 782, 783 (1971). We must deny the relief requested.

In considering Petitioners' motion for summary judgment, we have before us Petitioners' amended petition for review, Respondents' response to the amended petition for review, and Respondents' responses to interrogatories posed by Petitioners. Because Respondents filed no affidavits or other documents in support of its responses to the amended petition for review, we are confined to reviewing only the responses to the interrogatories and the uncontroverted facts raised by the pleadings. *See Phaff v.*

---

[8] Again, the fact that these decisions were rendered pursuant to the UDJA does not diminish their authority under the DJA.

*Gerner*, 451 Pa. 146, 149-52, 303 A.2d 826, 829-30 (1973) and *Laspino v. Rizzo* at 631, 398 A.2d at 1072-73. The answers to the interrogatories alone, however, defeat Petitioners' prayer for relief. We find it necessary to detail only those portions of the responses which raise genuine issues of material facts.

Petitioners contend that Respondents did not inspect, license, or regulate personal care boarding homes, citing as an example the home operated by Respondent Laughman in Lewistown. In response to interrogatory numbers one and two, however, Respondents detailed the actions they took in response to complaints received about the Laughman home.[9] Interrogatories number nine through twenty-one requesting specific information about personal care homes were not answered by Respondents. They were not answered, however, not because Respondents admitted that they do not inspect, regulate, or license "personal care boarding homes" but because they did not keep specific statistics for such homes as opposed to other "facilities" over which they exercise authority. Again, in response to interrogatories thirty, thirty-four, and thirty-five, Respondents do not admit, as Petitioners would infer, that they do not take action against unlicensed personal care homes or that they do not employ staff to inspect, license, and investigate such homes. Rather, the Respondents answered, they do not keep such records or employ such staff limited to dealing with "personal care homes" as a separate category of "facility." We note that although Respondents apparently admitted excluding mention of personal care homes from its required state plan for

---

[9] It must be noted that throughout these proceedings Respondents have contested the characterization of Laughman's home as a personal care home for adults. It is, they argue, a boarding home and, therefore, not covered by the regulations which Petitioners seek to have enforced here.

1978-79, Petitioners have offered no evidence that the federal funding which they described as "in jeopardy" was ever withheld.[10] Speculation as to a potential withholding of funds is not sufficient to warrant relief in this case.

Because this record, read in a light most favorable to Respondents, contains genuine issues as to material facts associated with this matter and does not show that Petitioners are clearly entitled to immediate relief, we deny their request for a mandatory injunction. Furthermore, there exists no authority for us to order the Secretaries to develop "cooperation" between the DPW and DOH. This is most especially true where we are dealing with summary relief.

Finally, we deny, as well, Petitioners' request for relief in mandamus.[11] Mandamus will lie to compel a public official to perform a ministerial act or a mandatory duty where there is a well-defined legal right in the petitioner and a corresponding well-defined duty in the respondent and where there exists no other adequate, specific, or appropriate remedy at law. *Commonwealth ex rel. Lindsley v. Robinson,* 30 Pa. Commonwealth Ct. 96, 101, 372 A.2d 1258, 1261 (1977). One seeking summary judgment in a mandamus action

> has a 'heavy burden' to prove to the court that his right to a summary judgment is 'clear and free from doubt.' ... [S]ummary judgment should only be granted when there are no disputed questions of fact which are material to the disposition of the case. (Citations omitted.)

---

[10] We also note that the Pennsylvania State Plan for 1980-81 as published at 10 Pa. B. 2637 *et seq.* does contain provisions relating to personal care homes.

[11] Summary judgment is made applicable to actions in mandamus through Pa. R.C.P. No. 1098. *City of Greensburg. v. Cooper,* 14 Pa. Commonwealth Ct. 419, 424, 322 A.2d 152, 154 (1974).

*City of Greensburg v. Cooper,* 14 Pa. Commonwealth Ct. 419, 424-25, 322 A.2d 152, 155 (1974). We need not repeat the details of the issues of fact presented by Respondents' responses to Petitioners' interrogatories. Such issues, however, preclude us from granting Petitioners' requested relief in mandamus on a motion for summary judgment.

We also note that we could not have granted the specific relief prayed for by Petitioners in any event. Our Courts have long refused to grant relief requiring the pursuit of a general course of conduct or a series of acts or continuous duties or requiring the court to act in a supervisory or managerial capacity. *Russell v. Osser,* 437 Pa. 45, 48-49, 261 A.2d 307, 308-09 (1970); *Dombrowski v. Philadelphia,* 431 Pa. 199, 222-23, 245 A.2d 238, 250-51 (1968); *Dorris v. Lloyd,* 375 Pa. 474, 479, 100 A.2d 924-927 (1953), *cert. denied,* 347 U.S. 936 (1954). Such relief was precisely what Petitioners sought from this Court. Even had we been able to enter summary judgment for Petitioners, we could not have granted the relief they requested.

The fact that we dismiss Petitioners' motion for summary judgment is no reflection, of course, on the merits of the issues raised in this action. We express no opinion on those issues at this time. We do recognize, however, the seriousness of the allegations made by Petitioners, especially when they are phrased in such human terms as the illnesses and deaths of Ms. Allen and Ms. Treaster, and the potential plight of thousands of Pennsylvanians residing in unlicensed personal care homes. For those reasons, we urge both sides to move quickly to a resolution of this matter so that those citizens residing in such homes are assured the decent, dignified living conditions to which they are entitled.

Petitioners' motion for summary judgment is denied.

## ORDER

AND Now, this 7th day of August, 1980, the motion for summary judgment filed by Clara Allen et al., Petitioners, is denied.