Pennsylvania Interscholastic Athletic Association, Inc., Appellant *v.* Greater Johnstown School District and Neil Walker, Natural Guardian of his son, Michael Walker, Appellees.

Pennsylvania Interscholastic Athletic Association, Inc., Appellant *v.* Greater Johnstown School District and Neil Walker, Natural Guardian of his son, Michael Walker, Appellees.

Argued March 2, 1983, before President Judge
CRUMLISH, JR. and Judges MACPHAIL and BARBIERI,
sitting as a panel of three.

*William M. Young, Jr.,* with him *Rod J. Pera,
McNees, Wallace & Nurick,* for appellant.

*Myron I. Markovitz*, with him *John J. Kuzmiak, Gleason, DiFrancesco, Shahade & Markovitz*, for appellees.

OPINION BY JUDGE MACPHAIL, August 3, 1983:

Two appeals by the Pennsylvania Interscholastic Athletic Association (PIAA) from orders of the Court of Common Pleas of Cambria County have been consolidated for our disposition. A brief review of the procedural posture of this case is necessary to clarify. which order or orders are before us for disposition.

Greater Johnstown School District (GJSD) and Neil Walker as natural guardian for his son Michael Walker (collectively Appellees), filed a "Motion for a Preliminary Injunction Without a Hearing"[1] which the trial court granted on December 4, 1981. No underlying complaint in equity was filed. Rule No. 1501 of the Pennsylvania Rules of Civil Procedure states that except as otherwise. provided, actions in equity will be in accordance with the rules relating to assumpsit. Pa. R.C.P. No. 1007 states that an action may be commenced by a praecipe for a writ of summons, a complaint or an agreement for an amicable action. None of these were filed in the instant case.

In its order granting the ex parte preliminary injunction, the trial court directed that a hearing be held and fixed bond. Hearings were held on two different dates. At the outset of the first hearing, Appellees stated that the matter for hearing was their request for a "permanent injunction". PIAA protested that the hearing was really for a preliminary injunction. The trial judge indicated that he would receive the testimony "and permit either party to

---

[1] Nowhere in the motion is a request made for a permanent injunction.

either move to dismiss or move to make the injunction permanent or move to continue the present order''. The trial court subsequently filed its ''Findings, Opinion and Adjudication'' in support of an order dated January 6, 1982 which stated, *inter alia,* that:

> [T]he preliminary injunction now in effect by order of this court be and hereby is made permanent. . . .

It appears to us that Pa. R.C.P. No. 1531(e) restricts the trial court in such circumstances to dissolving, continuing or modifying a preliminary injunction previously entered without hearing.

In any event, PIAA filed an appeal to this Court from the trial court's order of January 6, 1982[2] and, on the same date, filed exceptions with the trial court to its adjudication. Appellees filed an answer to PIAA's exceptions and extensive briefs were filed with the trial court. On February 25, 1982, the trial court dismissed the exceptions because it said it no longer had jurisdiction in view of the appeal to this Court. PIAA has appealed from that order as well.[3]

We note initially that with certain exceptions not here relevant, where an appeal is taken, the trial court may no longer proceed further in the matter. Pa. R.A.P. 1701. While it was appropriate for the trial court to note its lack of jurisdiction in its order of February 25, 1982, it was not authorized to dismiss PIAA's exceptions. No harm has come from this procedural error, however, since PIAA fully protected itself by filing appeals from both orders.

It is necessary for this Court to determine which appeal is now before it since different standards ap-

---

[2] Our appeal No. 134 C.D. 1982.

[3] Our appeal No. 799 C.D. 1982.

ply depending upon whether the appeal is from the grant of a temporary injunction or a permanent one. From our review of the procedural history of this case, we are of the opinion that the order of the trial court of January 6 which granted a permanent injunction was not authorized by Pa. R.C.P. No. 1531(a) and that the effect of that order was to continue the *preliminary* injunction granted without a hearing December 4, 1981. While it was not inappropriate for the trial court to file an opinion in support of its order, the adjudication it entered on January 6, 1982 could not be a final adjudication as contemplated by Pa. R.C.P. No. 1517 and, therefore, it was unnecessary for PIAA to file exceptions thereto or for the trial court to dispose of those exceptions.

In summary, we hold that the appeal filed to No. 779 C.D. 1982 must be quashed because the order of the trial court from which the appeal was taken was inappropriate. The appeal filed to No. 134 C.D. 1982 is properly before us for disposition.[4]

Factually, the issue in this case is a very narrow one: where a student transfers from one school district to another may he be prohibited from participating in interscolastic athletics by action of the PIAA where PIAA determines the transfer was athletically motivated? Michael Walker alleges that prior to the 1981-1982 school term he moved with his father to the City of Johnstown;[5] that the PIAA, following a hearing, ruled that Walker was ineligible

[4] Although we have previously noted that this case was not commenced as required by the Rules of Civil Procedure, we will address the merits to avoid a determination based upon the elevation of form over substance.

[5] It apears from the record that Walker previously resided in the Richland Township School District which is contiguous to GJSD.

to participate in interscholastic athletic contests; that Walker had been playing basketball for Greater Johnstown High School (Johnstown); and that the PIAA's action, if not reversed by the court, would cause irreparable harm by interfering with his right to a complete public education without due process of law.

The trial court found as a fact that Walker did reside in Johnstown at the time the complaint was filed, that Richland Township School District instigated the proceedings with the PIAA regarding Walker's eligibility, that certain provisions of the PIAA by-laws were enacted to prevent recruiting and transfers for athletic purposes, that the principal of Johnstown had ruled Walker eligible and that the District 6 Committee of PIAA subsequently ruled Walker ineligible.

The trial court concluded that it had jurisdiction of the case, that the PIAA hearing was "fraught with a substantial number of questionable occurrences", that the decision of the PIAA was biased, capricious and arbitrary, that there were no objective standards adopted by PIAA which would enable it to assert what was meant by a transfer "athletically motivated", that the failure of PIAA to observe Walker's procedural due process rights was an interference with Walker's property rights and that unless the court intervened, illegal and irreparable harm would befall Walker.

In its appeal to this Court, PIAA contends that Walker has no cognizable property interest to participate in interscholastic athletics, that no due process rights of Walker were violated by PIAA, that Walker was not denied equal protection under the law by PIAA and that the trial court should not have

entertained jurisdiction of the case. Appellees contend that since Walker has now graduated, this appeal is moot.

Addressing first the issue of mootness, we observe that this Court has held that cases will not be dismissed as moot where they concern questions of a recurring nature, capable of avoiding review and of important public interest. *Allen v. Colautti*, 53 Pa. Commonwealth Ct. 392, 417 A.2d 1303 (1980). We have held further that there is a heavy burden upon the one asserting the defense of mootness to prove that there is no reasonable expectation that the past conduct will be repeated. *Id.* PIAA urges that this is the kind of case that will recur, that there will never be an opportunity for appellate review when similar cases arise and that if left undisturbed, the decisions of the trial court will cause detriment to PIAA.

While it may be questionable as to whether the general public has a vital interest in the outcome of this case, it seems safe to say that at least the sports minded public in Johnstown and elsewhere do consider the issue important. We must agree with PIAA that should similar cases arise, it is unlikely that there would ever be an opportunity for appellate review where the plaintiff is playing his last year in interscholastic sports. In short, we conclude that PIAA's arguments are persuasive and we will refuse to dismiss the appeal for mootness.

With respect to the merits of the case, the law is that where the propriety of an order granting a preliminary injunction is the subject of appellate review, we are required to determine whether there was any apparently reasonable ground in the record to justify its issuance. *Fischer v. Department of Public Welfare*, 497 Pa. 267, 439 A.2d 1172 (1982). A preliminary injunction is an extraordinary remedy avail-

able only where the party seeking it establishes that; 1) it is necessary to prevent immediate and irreparable harm not compensable in damages, 2) greater harm would result from denying it than from granting it, 3) the right to it is clear and 4) the status quo would be restored if it was granted. *Valley Center, Inc. v. Parkhouse,* 62 Pa. Commonwealth Ct. 453, 437 A.2d 74 (1981).

The trial court concluded that if it did not exercise its equitable powers, illegal and irreparable harm would befall Walker and GJSD and that no amount of money damages would compensate Walker "or his teammates for this interference in this part of their educational endeavor". As we have already noted, the trial judge also concluded that the actions of PIAA were "capricious, arbitrary and discriminatory" and that the failure of PIAA to adhere to procedural due process interfered with the property rights of Walker and GJSD.

We first examine whether property rights of Walker and GJSD were interfered with by the PIAA. The trial judge properly concluded that there is no property right to participate in athletics. This was our holding in *Adamek v. Pennsylvania Interscholastic Athletic Association,* 57 Pa. Commonwealth Ct. 261, 426 A.2d 1206 (1981), *allocatur denied.* The trial court concluded, nevertheless, that if PIAA (or anyone else) challenged Walker's right to participate in athletics the challenger would have to comply with substantive and procedural due process. We respectfully disagree. Before one is entitled to procedural due process, there must be some identifiable property right to determine what process is due. *Bunting v. City of Columbia,* 639 F.2d 1090, 1093 (4th Cir. 1981). The trial court determined that Walker's participation in athletics was a part of his education and that

once he participated in interscholastic athletics, he could be removed only by his coach or his principal. If such was the law, the PIAA would be without any authority whatsoever with respect to the enforcement of eligibility rules. One of the purposes of the PIAA is to promote uniformity of standards in interscholastic athletic competition. PIAA could hardly do this if the removal of a player was left to the discretion of the player's coach or principal. In short, we find no constitutional right of Walker affected by the PIAA action. This does not mean, of course, that the PIAA is free to act capriciously, arbitrarily or in a discriminatory manner. It does mean that the remedy lies not with the courts but within the internal operating procedures of PIAA which are controlled by the member schools.

The trial court found also that the property rights of GJSD were affected also by PIAA's actions, but nowhere are such rights identified.

In its order of January 6, 1982, the trial court stated that it found Walker's due process *and* equal protection rights under the constitution to have been violated by the PIAA's actions. Due process and equal protection rights do overlap on occasion, yet, since they are two separate and identifiable rights, different concepts of law apply.

From our reading of the record and the trial judge's opinion, it appears that the equal protection argument here arises from a similar case in 1977 where PIAA found one Ricky Tunstill to be eligible for basketball when he transferred from a Cleveland high school to Altoona Area High School. In its conclusions of law, the trial court inferred that the PIAA's action in the Walker case was discriminatory, arbitratory and capricious in light of its disposition of the Tunstill case.

PIAA says there are valid reasons to support its action in the Tunstill case but we do not think it is necessary for us to determine whether the two cases were decided differently so as to warrant a conclusion of discrimination; neither do we think that different treatment of the two cases would be sufficient to warrant the trial court's conclusion that Walker's equal protection rights were violated.

A case quite similar to the one before us both factually and legally is *Walsh v. Louisiana High School Athletic Association,* 616 F.2d 152 (5th Cir. 1980). There, an association (LHSAA) quite similar to PIAA had an eligibility rule regarding transfers for athletic purposes. LHSAA determined certain students to be ineligibile for basketball under their residence rule. The trial court found for the students, holding that LHSAA's ruling violated the students' equal protection rights. On appeal, the trial court was reversed. The United States Court of Appeals for the Fifth Circuit said that the rational basis test is to be used to determine whether equal protection rights were violated where fundamental rights or interests are not trammeled or an inherently suspect class is not burdened. The Court held that no such rights or interests were involved in the case before it and applied the rational basis test. The Court concluded that:

> The rule adopted by the LHSAA, together with the classification that results, is rationally and logically related to the association's valid and legitimate interest.

616 F.2d at 160.

In the instant case, the trial court applied that "strict scrutiny" rule in its examination of PIAA's action with respect to Walker. This was error. As in *Walsh,* the classification that results when PIAA

declares ineligibile athletes whose transfer to another school district is athletically motivated, is rationally and logically related to PIAA's valid and legitimate interest in preventing transfers and recruiting for athletic purposes. Its decision in the Walker case did not trammel upon Walker's equal protection rights.

In the absence of the deprivation of or impingement upon Appellees' constitutional rights, there is no reasonable ground to justify the issuance of a preliminary injunction in this case. Appellees suffered no immediate and irreparable harm by reason of PIAA's actions.

The trial court found from evidence presented that Walker's ability to obtain a college scholarship would be damaged if he was ineligible to play basketball for Johnstown and that other members of the team would lose some of their scholarship consideration. The trial court concluded that no amount of damages would compensate Walker or his teammates for this interference with their educational endeavor. It must be observed that any damage to Walker's teammates would be irrelevant in this case since they are not parties to this action. It is not clear to us, moreover, that compensatory damages would be inadequate if it was established that unlawful interference by PIAA deprived Walker of scholarship opportunities.

We conclude that the trial court erred when it found immediate and irreparable harm to the Appellees and that their right to a preliminary injunction was clear. We must, accordingly, reverse.

ORDER IN 134 C.D. 1982

The order of the Court of Common Pleas of Cambria County entered January 6, 1982 granting a preliminary injunction to Greater Johnstown School Dis-

trict and Neil Walker, natural guardian of his son, Michael Walker, is reversed.

ORDER IN 779 C.D. 1982

The appeal of the Pennsylvania Interscholastic Athletic Association, Inc. from the order of the Court of Common Pleas of Cambria County dated February 25, 1982, is quashed.