520 A.2d 70

Tid Bit Alley, Inc., Appellant *v.* Erie County, Erie County Department of Health, Appellee.

Argued October 10, 1986, before Judges CRAIG and BARRY (P), and Senior Judge BLATT, sitting as a panel of three.

*John W. Beatty, Knox, Graham, McLaughlin, Gornall and Sennett, Inc.,* for appellant.

*Patricia A. Whitmire,* for appellee.

OPINION BY JUDGE CRAIG, January 8, 1987:

Tid Bit Alley, Inc. here appeals an order of the Court of Common Pleas of Erie County which (1) up-

held the validity of the procedure by which the Erie County Department of Health (ECDH) had allegedly adopted a state regulation of the Pennsylvania Department of Environmental Resources (DER), controlling the retail sale of bulk food, as its own local regulation, and (2) alternatively upheld ECDH's power to enforce the state regulation as such, in accordance with its literal terms.[1] The appeal also involves the trial court's categorization of Tid Bit Alley's bulk food sale process as constituting a nuisance.

---

[1] ECDH introduced a Memorandum of Understanding between the Pennsylvania Department of Environmental Resources and the Pennsylvania Department of Agriculture regarding Inspection of Food Establishments. Under the subheading, "Determination of Jurisdiction," the memorandum provides:

> The responsibility for regulation of the various types of food establishments is generally mandated by existing laws, rules and regulations. In those situations wherein the laws of the two agencies overlap, the determination of jurisdiction, for the purpose of this Memorandum, has been established through comprehensive list of food establishment types, categorized according to the agency having jurisdiction.
>
> In general, *places where food is* prepared and consumed on the premises, or *sold for off-premise consumption, are the responsibility of DER;* food processing places, wholesale food stores, beverage plants, etc., are the responsibility of PDA. Exceptions to this delineation, such as retail food stores, are so noted in the appendix. (Emphasis added.)

On the other hand, a letter of record from Leroy C. Corbin, Jr., Chief, Division of Food Control, Department of Agriculture, to Mr. Ben Blank, Tid Bit Alley, indicates that PDA, not DER, actually assumed jurisdiction over Tid Bit Alley. In part, the letter states: "Please be advised that this Department has not found reason through numerous inspections to pursue any compliance action against your operation. . . ."

However, PDA apparently conducted those inspections at Tid Bit Alley's Pennsylvania locations other than the one in Erie because the memorandum further states:

Trial Judge LEVIN found that Tid Bit Alley is a New Jersey corporation which operates a retail food establishment in the Millcreek Mall, Millcreek Township, Erie County.[2] On November 1, 1985, Tid Bit Alley opened its establishment for business without any plan review or license from the ECDH, although, in earlier communications, officials of the ECDH had informed Tid Bit Alley that a plan review was the initial stage of ECDH's mandatory licensing procedure, and had further stated that dispensing containers, which the store planned to use in the sale of bulk food, did not meet ECDH's standards because they permitted customer contact with food being offered for sale.

According to record testimony, in its Erie store, as in its other stores around the Commonwealth, Tid Bit Alley offers bulk food for sale in barrel-like containers, each covered by a hinged lid. Customers may take the desired quantity by using a scoop or tongs which are attached to the container. The trial court found that the store premises contained several hundred food dispensers with loose-fitting lids, which permit customer contact with food offered for sale to the public.

Erie County and ECDH initiated this equity action in the Court of Common Pleas of Erie County. After a nonjury trial, the court ordered that the store cease and desist from its current bulk food sale operations until it secures a license from ECDH.

This agreement does not cover those facilities located within counties, cities, boroughs, or townships having their own health jurisdiction. Local health jurisdictions may be included in this agreement at a future date.

[2] Under regulations promulgated by DER to regulate eating and drinking places, "retail food establishment" is defined as "[a]ny place, whether temporary or permanent, stationary or mobile, where food or drink is packaged, stored, served, sold or offered for sale directly to the consumer." Tid Bit Alley does not contend that its Erie County store is not a retail food establishment.

*Standing—Authorization of Suit*

Tid Bit Alley contends that ECDH, through its director, improperly brought this equity action in the court of common pleas because ECDH instituted the action on its own without the reference to the County Executive, as directed by section 12 of the Local Health Administration Law.[3]

Section 12 of the Local Health Administration Law, 16 P.S. §12012, provides in pertinent part:

(d)   Whenever the health director finds a nuisance detrimental to the public health, he shall cause such nuisance to be abated. . . . In lieu of, or in addition to the above procedure, the county commissioners may, upon the advice of the health director, seek relief from a nuisance or threatened nuisance detrimental to the public health by instituting proceedings in a court of equity.

Article XI, §4 of the Erie County Home Rule Charter, 325 Pa. Code §11.4, provides that:

All references to County Commissioners in the laws of Pennsylvania shall . . . be construed to refer to the County Council and County Executive whenever such construction would be reasonable.

However, the amended complaint states that the plaintiffs are the County of Erie and the Erie County Department of Health. Additionally, as the trial court pointed out, the county council joined the action. Both the county and the county council adopted ECDH's position. Therefore, the county's presence in this action substantially conforms with the requirements of section 12 of the Local Health Adminstration Law, 16 P.S. §12012(d).

---

[3] Act of August 24, 1951, P.L. 1304, *as amended,* 16 P.S. §12012.

## *Statutory and Regulatory Background*

Neither the Eating and Drinking Places Law,[4] now directed to the Department of Environmental Resources, nor the General Food Law,[5] directed to the Department of Agriculture, confers jurisdiction upon county health departments to enforce the health laws. However, section 10(a) of the Local Health Administration Law, 16 P.S. §12010(a), the law which empowers counties to create departments of health, directs each department to "execute powers and duties vested in it or in local health authorities generally" by laws and state regulations, as well as—under section 10(f)—to make and enforce county regulations as necessary for the promotion and preservation of the public health. Erie County officials organized the Erie County Department of Health in 1955, under the latter statute.

---

[4] Act of May 23, 1945, P.L. 926, §§1-12, *as amended,* 35 P.S. §§655.1-.12. The act is formally titled, "An Act for the protection of the public health by regulating the conduct and operation of public eating and drinking places within this Commonwealth; requiring their licensing, imposing certain duties on the Department of Health of this Commonwealth and on the local health authorities; and providing penalties."
Section 1901-A of the Act of April 9, 1929, P.L. 177, §1901-A(11), *as amended,* added by Section 20 of the Act of December 3, 1970, P.L. 834, 71 P.S. §510-1(11), directs that the Department of Environmental Resources shall continue to exercise the powers and perform the duties imposed upon the Department of Health by the Eating and Drinking Places Law.
[5] Act of May 13, 1909, P.L. 520, §§1-13, *as amended,* 31 P.S. §§1-13. The act is formally titled, "An Act relating to food: defining food; providing for the protection of the public health, and the prevention of fraud and deception, by prohibiting the manufacture or sale, the offering for sale or exposing for sale, or the having in possession with intent to sell, of adulterated, misbranded, or deleterious food; prescribing certain duties of the Dairy and Food Commissioner in reference thereto; and providing penalties for the violation thereof."

In 1971, the Department of Environmental Resources promulgated 25 Pa. Code §151.171 to regulate retail food establishments. Subsection (c) of that regulation provides:

Only persons directly employed in the retail food establishment shall be permitted to handle unpackaged food intended for sale to the public. Display cases shall be so designed and arranged to prevent handling of such food by the public. The provisions of this subsection shall not apply to produce or any other product which is adequately packaged, wrapped or protected for display and self-service by the customer.

In the present case, ECDH claims that it (1) has adopted that regulation as its own regulation, which it may apply according to ECDH's own interpretation, or (2) that the laws and state regulations empower ECDH to enforce 25 Pa. Code §151.171 directly according to its literal terms. Hence, ECDH objects to the containers used by Tid Bit Alley because they permit customer contact with the food. ECDH suggests that, in the alternative, Tid Bit Alley could obtain a license by replacing the barrels with vertical chute dispensers, by offering prepackaged bulk foods to customers, or by dispensing bulk foods through an employee of the store who would scoop and package the amount of food desired by the customer, to avoid customer contact with unpackaged food.

### In-Futuro Adoption of Regulations

The trial judge concluded that:

3. The ECDH has rules and regulations which were properly promulgated and adopted pursuant to 16 P.S. §12011(c).

. . . .

7. Adoption of the regulations at issue conformed to the requirement of due process and the requirements were not so vague as to be unconstitutional.

ECDH argues that it properly promulgated 25 Pa. Code §151.171 as its own regulation, through *in-futuro* adoption by a March 12, 1957 resolution of the Erie County Commissioners, authorizing the Director of ECDH and his agents to enforce, within the jurisdiction of ECDH

the following rules and regulations of the Department of Health, Commonwealth of Pennsylvania, as long as these regulations are in effect, *and likewise any rules and regulations which may subsequently be enacted to replace said rules and regulations or any amendments thereto.*

. . . .

(5) Rules and regulations of the Department of Health of the Commonwealth of Pennsylvania . . . for the protection of the Public health by regulating the conduct and operation of Public eating and drinking places. . . .

On March 20, 1957, the commissioners published notice of that action.

ECDH argues that the 1957 action and publication put the citizens of Erie County on notice that current and future state regulations would be in effect as local regulations. ECDH also contends that the Erie County Board of Health need not follow the letter of section 11 of the Local Health Administration Law, 16 P.S. §12011, each time the state changes its health regulations, because the state employs procedural safeguards when promulgating its own regulations.

We cannot agree. The Local Health Administration Law grants the power to formulate health rules and

regulations only to the County Board of Health. Section 11 directs that rules and regulations formulated by the Board of Health:

(1) Shall be submitted to the county commissioners for approval or rejection

(2) The county commissioners shall give written notice to the board secretary of their approval or rejection within thirty days after receipt

(3) The board secretary shall certify approved rules and regulations and record them in a book which shall be open at all reasonable times to public inspection

. . . .

(5) The rule or regulation shall be published within ten days of its publication either in full or so as to indicate its place of record.

ECDH concedes that, when DER promulgated 25 Pa. Code §151.171 in 1971, ECDH followed none of these steps. We are aware of no authority which permits the circumvention of the express requirements of 16 P.S. §12011.

ECDH cites, as authority for the propriety of *in-futuro* adoption, Mermin, "Co-Operative Federalism" Again: State and Municipal Legislation Penalizing Violation of Existing and Future Requirements: I, 57 Yale L.J. 1 (1947). However, that article suggests only that the adoption of an *existing* regulation, not the *in-futuro* adoption of a regulation, does not involve a delegation of legislative authority. *See H. A. Steen Industries, Inc. v. Cavanaugh,* 430 Pa. 10, 19, 241 A.2d 771, 776 (1968).

Citing *Steen,* ECDH also argues that Tid Bit Alley has no standing to attack the constitutionality of an *in-futuro* adoption of a regulation. In *Steen,* the Supreme Court, citing *Commonwealth v. Alderman,* 275 Pa. 483, 487, 119 A. 551, 553 (1923), stated that a party has no

standing to attack the constitutionality of an *in-futuro* adoption if there has been no change in the adopted requirements between the time of adoption and the time of application to him. ECDH adopted the state health regulations in 1957 and purported to adopt 25 Pa. Code §151.171 in 1971; a change has occurred between the time of initial adoption and the current application. Accordingly, under *Alderman*, Tid Bit Alley does have standing to attack the constitutionality of the present *in-futuro* adoption.

In *Pennsylvania State Board of Pharmacy v. Cohen*, 448 Pa. 189, 200, 292 A.2d 277, 282 (1972), the Supreme Court stated, "[n]either the legislatively chosen agency . . . , nor the courts may imagine rules or standards for conduct not properly adopted and announced in advance."[6] *See also Marion v. Green*, 95 Pa. Commonwealth Ct. 210, 505 A.2d 360 (1986).

Accordingly, we conclude that ECDH did not promulgate a county counterpart of 25 Pa. Code §151.171 with legal effect and accordingly may not enforce it as its own regulation.

### Enforcement of State Regulations.

ECDH nevertheless argues that it may enforce 25 Pa. Code §151.171 as a regulation of the Common-

---

[6] In *Cohen*, the Supreme Court quoted Davis, A New Approach to Delegation, 36 U.Chi.L.Rev. 713 (1969), wherein Professor Davis wrote:

[T]he protections [against unnecessary and uncontrolled discretionary power] should grow beyond the non-delegation doctrine to a much broader requirement, judicially enforced, that as far as is practicable administrators must structure their discretionary power through appropriate safeguards and must confine and guide their discretionary powers through standards, principles and rules.

448 Pa. at 202-03 n. 14, 292 A.2d at 284 n. 14.

wealth in accordance with section 10(a) of the Local Health Administration Law, noted above, and also under section 12(c) of the same Law, which provides:

> The health director and his authorized subordinates may enter and inspect at reasonable times and in a reasonable manner any places or conditions whatsoever within the jurisdiction of the county department of health for the purpose of *enforcing the health laws, rules and regulations of the Commonwealth* and the county department of health, and for the purpose of examining for, and abating nuisances detrimental to the public health.

16 P.S. §12012(c) (emphasis added).

Although ECDH has promulgated no written regulation of its own mandating the use of vertical chutes in the dispensing of bulk foods,[7] we note that 25 Pa. Code §151.171(c) does expressly state that "Only persons directly employed in the retail food establishment shall be permitted to handle unpackaged food intended for sale to the public." Clearly, to require vertical chute dispensers, or some other method of eliminating direct customer contact with food, is not inconsistent with the regulation's express aim—"to prevent handling of . . . food by the public."

---

[7] Joseph Trzybinski, the manager of environmental control problems for ECDH testified:

> Q. Interrogatory 7, 'Has the plaintiff, on its own, adopted any regulations for the health and safety of the citizens of Erie County to enumerate what type of prepared or unprepared food stuffs that patrons are allowed to serve themselves for consumption off of the premises of what is commonly known as salad bars or soup bars in supermarkets or other similar establishments which are commonly known as retail food establishments,' and your answer is, 'No.'
>
> A. Correct.

Tid Bit Alley argues that ECDH may not enforce a DER regulation and, in fact, a letter from a Department of Agriculture official to Tid Bit Alley reflects that department's apparent belief that it, and not DER, has jurisdiction over Tid Bit Alley where no local health department exists.[8] However, the Memorandum of Understanding between DER and the Department of Agriculture does in fact appear to give effect to DER's regulations over places like Tid Bit Alley, by providing "[i]n general, places where food is . . . sold for off-premise consumption, are the responsibility of DER."

However, repeatedly throughout 25 Pa. Code §151, the regulations direct that enforcement responsibilities shall be carried out by the "licensor." In 25 Pa. Code §151.1, "licensor" is defined as "[a]ny health agency approved by the Department to grant licenses to places serving food or drink." As such a licensor, ECDH is accordingly authorized to enforce 25 Pa. Code §151.171 (c).

Thus, because ECDH's application of 25 Pa. Code §151.171(c) follows the plain meaning of that DER regulation, ECDH may prohibit Tid Bit Alley from dispensing bulk foods through its present means, and may withhold a license until Tid Bit Alley employs means of dispensing which avoid customer contact with the food offered for sale.

### Statutory Nuisance

The trial court also concluded that Tid Bit Alley's method of merchandising is a nuisance by statutory definition. We cannot agree.

---

[8] A letter from Leroy C. Corbin, Jr., of the Department of Agriculture to Tid Bit Alley stated that "[i]nspections revealed substantial compliance with our guidelines on the handling of self-service bulk foods."

In *Talley v. Borough of Trainer*, 38 Pa. Commonwealth Ct. 441, 394 A.2d 645 (1978), this court concluded that a municipality may not merely label a specific use as a nuisance per se, but rather must phrase its ordinance in such a way as to require the municipality to establish affirmatively that a nuisance in fact existed. In that case, we upheld the trial court's conclusion that the municipality had sustained its burden of proving that the petitioner had violated that section of the municipal ordinance which prohibited the placement of a wrecked, junked, stripped or abandoned vehicle in a place where its presence constitutes a hazard on private property.

In the present case, the state regulations, 25 Pa. Code §151.171(c), set forth only affirmative requirements imposed upon retail food establishments, not prohibitions.

In *Schubach v. Silver*, 9 Pa. Commonwealth Ct. 152, 305 A.2d 896 (1973), *rev'd on other grounds,* 461 Pa. 366, 336 A.2d 328 (1975), this court stated that a simple violation of a zoning ordinance does not constitute a nuisance per se. We adopt that principle here, concluding that, even if Tid Bit Alley violated 25 Pa. Code §151.171(c), that violation does not constitute a nuisance per se.

## Common Law Nuisance

Finally, the trial court also decided that Tid Bit Alley's bulk food sale constituted a common law nuisance. The trial court made two express findings regarding Tid Bit Alley's method of dispensing:

10. The premises contained several hundred of the food dispensers which permit customer contact with food offered for sale to the public.

11. The premises contained several hundred food dispensers with loose-fitting lids.

However, in the discussion section of the opinion, the trial court commented upon the use of the containers based upon the court's personal viewing of the site. The court noted that, although posted signs required the use of gloves when handling the product, the gloves and dispensing bags appeared to be beyond the reach of children. The court also noted that some lids were not tightly closed while others were falling off the containers.[9]

In *Zimmerman v. Philjon, Inc.*, 470 Pa. 409, 414, 368 A.2d 694, 696 (1977), the Supreme Court reaffirmed that, "where there is no nuisance per se, an injunction will not be granted to restrain a nuisance that is merely anticipated or threatened." (Citation omitted.)

In view of the absence of evidence tending to prove that the conditions surrounding Tid Bit Alley's current method of merchandising constitute a nuisance in fact, facts found by the trial court based upon its viewing of the site do not constitute competent evidence to support the trial court's conclusion that a common law nuisance presently exists.

In *Cowan v. Bunting Glider Co.*, 159 Pa. Superior Ct. 573, 575-76, 49 A.2d 270, 271 (1946), the Superior Court stated:

Triers of fact, be they judges, jurors, viewers, board or commissions, may always visit and inspect the locus in quo to secure a better under-

---

[9] In bold type, the trial court wrote:

**Possibly the most disturbing of all was that the Court observed in its view one young person had one of the gloves supplied by Defendant on his hand in his mouth. This, coupled with the scoops touching the merchandise, has made the Court acutely aware of the potential health hazard.**

standing of the evidence and to enable them to determine the relative weight of conflicting testimony. But a view cannot replace testimony; the visual observations of the trier cannot be substituted for testimony; and the only legitimate purpose of an inspection is to illustrate the evidence and provide a base for understanding and comprehending testimony upon the record. . . . (Citations omitted.)

The rationale, according to *Cowan*, is that the trier of fact, by relying upon the view as an independent source,[10] could thereby become a witness without taking the witness stand.

### Conclusion

Because this court concludes that a nuisance determination is not supportable and that ECDH did not adopt a governing regulation of its own, but that ECDH is empowered to withhold a license on the basis of the plain terms of the state regulation, the decree will be modified accordingly, and, as modified, will be affirmed.

### ORDER

Now, January 8, 1987, the adjudication and order of the Court of Common Pleas of Erie County at No. 80-Equity-1985, dated April 14, 1986, is modified to con-

---

[10] An exception to this rule exists by statute in the area of eminent domain. Section 703(1) of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-703(1), provides:

Either party may, as a matter of right, have the jury, or the judge of the trial without a jury, view the property involved, notwithstanding that structures have been demolished or the site altered, *and the view shall be evidentiary.* . . . (Emphasis supplied.)

sist of the first three lines of paragraph 2 of that order, as follows:

> Defendant shall cease and desist its current manner of operation until a license and/or permission for continuation of business is obtained from the Erie County Department of Health.

As thus modified, the order is affirmed.