562 A.2d 989

**FAIRVIEW TOWNSHIP**

v.

**Dennis L. SCHAEFER and Geraldine T. Whiteman.**

**Appeal of Dennis L. SCHAEFER, Appellant.**

Commonwealth Court of Pennsylvania.

Argued May 1, 1989.

Decided Aug. 4, 1989.

Petition for Allowance of Appeal Denied Feb. 28, 1990.

Daniel J. Brabender, Jr., Carney & Good, Erie, for appellant.

Michael S. Jan Janin, with him, Donald C. Buseck, Quinn, Gent, Buseck & Leemhuis, Inc., Erie, for appellee Fairview Township.

Before CRAIG and SMITH, JJ., and NARICK, Senior Judge.

CRAIG, Judge.

Although both parties argue this case as a conflict between the statutory powers of a state agency and a political subdivision, the salient issue is not which of two statutes carries greater weight, but whether a court of equity has the authority to intervene and provide specific relief when a nuisance exists.

Dennis L. Schaefer appeals an order by Judge Joyce of the Court of Common Pleas of Erie County, granting Fairview Township a mandatory injunction requiring Schaefer to remove from the township a live tiger which he maintains in captivity.

Schaefer keeps the tiger at his residence in the second class township of Fairview. The tiger, caged by a six-foot-high chainlink fence with a roof, has been declawed. Schaefer intends to defang the animal at a later date. The Pennsylvania Game Commission has authorized Schaefer's possession of the tiger by issuing, under the guidelines of section 2963 of the Game and Wildlife Code, 34 Pa.C.S. § 2963, an "Exotic Wildlife Possession Permit." [1]

On August 17, 1988, Fairview Township filed a complaint in equity for a preliminary and final injunction in the Common Pleas Court of Erie County, requesting an order mandating removal of the tiger from the township. The township contends that the presence of the tiger is a prohibitable nuisance under section 702, cl. XII, of the Second Class Township Code,[2] and a threat to the safety of all persons within the township. Section 702, cl. XLVII, of the Second Class Township Code, 53 P.S. § 65747, authorizes the township to "take all needful means for securing" against such threats.

Schaefer's response is that the tiger is not a threat to the community, and that the township's police power under the Second Class Township Code does not supersede the commission's authority as granted by the Game and Wildlife Code. Additionally, Schaefer asserts that the presence of the tiger does not constitute a nuisance.

On August 29, 1988, Judge Joyce held a hearing on the matter, and after viewing the tiger in its surroundings, made the following findings of fact:

(1) "[A] very real danger presently exists that a person, perhaps even an unknowing or curious child, might approach the properly confined tiger and still sustain injury, possibly of a serious nature;

(2) "[D]espite the inspection and certification of the cage facilities by the Pennsylvania Game Commission, it is diffi-

1. Tigers are defined as "exotic wildlife", under section 2961 of the Game and Wildlife Code, 34 Pa.C.S. § 2961.

2. Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. § 65712.

cult to believe that mere chainlink fencing would be enough to hold back a 600 pound tiger desiring to free itself from its confines for whatever reason. It should be noted that the tiger, already a healthy 225 pounds, has succeeded in pushing the chainlink fence approximately one foot from true vertical so that bulges appear in the fence. It is the court's opinion that while the small chainlink cage can at this time hold off the tiger's normal tendency to be free, the fence will be ineffective to withstand the impact of the tiger's body once it reaches maturity (i.e. approximately 600 pounds);"

(3) "[T]he court noted [at the viewing] that the tiger at one point reached its paw out of the cage and encircled the defendant's calf with one of its paws. This type of action presents a very real danger to an innocent onlooker, despite the fact that each of the tiger's paws have been declawed, her rather menacing teeth are intact. In short, the tiger presently possesses the ability to seriously harm an unwary, curious onlooker;"

(4) "[The tiger] most certainly presents a serious risk of harm to all who come into contact with it, even while it is confined to the cage;" and

(5) "[T]he tiger constitutes an 'attractive nuisance' that will continue to draw children, and others wanting to get a closer look, towards the tiger's cage."

On the basis of the findings, the trial court ordered Schaefer to remove the tiger from Fairview Township.

Schaefer now appeals to this court, contending that the specific guidelines of the Game and Wildlife Code, to which the commission must adhere when issuing a possession permit, supersede the general police power of section 702, cl. XLVII, of the Second Class Township Code. Additionally, Schaefer asserts that the trial court did not have sufficient evidence to rule that the tiger is a nuisance.

The subject matter before us—possession of an exotic wildlife animal that may also be a nuisance—is one of first impression. However, the Pennsylvania Supreme

Court has addressed the analogous situation of a lawfully authorized business being challenged as a nuisance.

In *Perrin's Appeal*, 305 Pa. 42, 156 A. 305 (1931), an adjoining landowner contested the construction of a gasoline station in a restricted zoning district. Even though zoning officials had granted a permit, the Supreme Court negated the permit and held that

Acts of municipal officers under zoning legislation permitting the use of property for what is or may be a nuisance, do not oust the jurisdiction of equity to determine whether a nuisance in fact exists and should be restrained. It would be contrary to the constitutional guarantee, if, through statute, ordinance, or under a so-called exertion of police power, one's property could be taken, injured, or destroyed, and one's health made to suffer from the use of another's property for the benefit of the latter owner. The use is not relieved of its offensive incidents as far as equity is concerned even though a majority of the owners under a consent ordinance agree that land may be so used; those who do not consent have a right to be heard in a legal forum in opposition to the use. In equity, the court will regard such ordinances in the nature of a fact found or an expression of municipal thought and opinion. Such ordinance may thus aid courts in determining the substantive question involved, but they are not conclusive where the question is one of nuisance.

*Id.*, 305 Pa. at 51, 156 A. at 307.

The court later resolved a similar factual situation by holding that "where a nuisance exists, equity may intervene to enjoin it even though there has been compliance with zoning acts and ordinances." *Mazeika v. American Oil Company*, 383 Pa. 191, 194–95, 118 A.2d 142, 143 (1955).

The case of *Reid v. Brodsky*, 397 Pa. 463, 156 A.2d 334 (1959), parallels our present situation. In *Reid*, a restaurant owner (Brodsky) purchased property in a residential district for the purpose of operating a taproom-restaurant. He received approval from the Philadelphia zoning authori-

ties and from the Pennsylvania Liquor Control Board. Brodsky also spent $50,000 remodeling and improving the standing building, and to transfer a restaurant liquor license from a previously granted location. Before the restaurant opened, residents of the neighborhood instituted an equity action in the Court of Common Pleas of Philadelphia County to enjoin the opening of the restaurant on the theory of anticipatory nuisance. After the restaurant opened for business, the residents amended their complaint to reflect the theory that the premises now constituted a nuisance in fact.

The trial court enjoined the operation of Brodsky's business, and, on appeal, the Supreme Court relied on three significant points of law in affirming the decree:

(1) Zoning authority approval does not affect the power of a court of equity to enjoin the restaurant as a nuisance; Id., 397 Pa. at 466 n. 1, 156 A.2d at 336 n. 1.

(2) Whatever may have been spent is immaterial because the owner took a calculated risk bringing a potential nuisance into the neighborhood; Id., 397 Pa. at 466 n. 3, 156 A.2d at 337 n. 3, and

(3) A fair test as to whether something constitutes a nuisance is the reasonableness or unreasonableness of the subject of the complaint in the particular locality and in the manner and under the circumstances of the case. Id., 397 Pa. at 469–70, 156 A.2d at 338.

Schaefer's receipt of an exotic wildlife possession permit from the Game Commission is analogous to an owner receiving permission from zoning authorities.

Although a zoning authority, like the Game Commission here, receives its power from a statute, the Supreme Court has made clear that a court in equity may intervene to enjoin a lawful business if it becomes a nuisance in fact. The same power of an equity court to intervene must apply when a lawfully possessed exotic wildlife animal becomes a nuisance in fact.

■ Therefore, because we need not address the issue of the extent of the Second Class Township police power, the only remaining issue is whether the trial court had sufficient evidence to find that the tiger is a nuisance in fact, in this case—an attractive nuisance.

Section 339 of the Restatement (Second) of Torts defines an "attractive nuisance" as a place where an artifical condition exists:

(a) ... which the possessor knows or has reason to know that children are likely to trespass, and

(b) The condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) The children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) The utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) The possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

The trial judge viewed the tiger and considered testimony from Schaefer, two of his neighbors, a township supervisor, and the Executive Director of the Erie Zoological Society in making its findings of fact.

The township supervisor testified as to the residential nature of Schaefer's neighborhood, complaints about the tiger received by the supervisors, and the lack of other exotic wildlife in the neighborhood.

One neighbor reiterated the supervisor's testimony, and described an incident where he and his family saw the tiger sprawled across the top of a car in Schaefer's driveway.

The Executive Director of the Erie Zoological Society, James Rhea, testified that tigers are "predators" capable of getting "out of hand at any given time," regardless of

whether the tiger is declawed. He further stated that it is not possible to domesticate a tiger, and explained that professional care is the key to possessing a tiger safely. Rhea also agreed that a residential area is not an appropriate place for a tiger to reside because it poses a threat to the safety and welfare of area residents.

Schaefer testified that he knows of no other live tigers in Fairview Township. Furthermore, he stated that he resides alone and works from 9 to 5, at which time the tiger is left unattended. Schaefer also acknowledged that tigers are wild animals that, for no reason, could bite a person. Moreover, Schaefer confirmed that on at least one occasion, the tiger was sprawled across the top of a car. The confirmation of the incident is significant because Schaefer had earlier responded to the question of describing the living conditions of the tiger at his residence by stating "[s]he has a large cage, clean cage. *By law, I keep the cage locked at all times, that's one of the requirements."* (Emphasis added).

Schaefer's testimony is an admission of his awareness that the Game Commission will not grant a possession permit until it is satisfied that the provisions for housing and caring are adequate (*See* 34 Pa.C.S. § 2963), but that he breached the requirement that the tiger remain securely caged to protect the public.

Finally, we consider the personal observations made by the trial judge upon viewing the tiger. The court noted that the fence had been pushed "approximately one foot from true vertical so that bulges appear in the fence," that "the tiger at one point reached its paw out of the cage and encircled the defendant's calf with one of its paws," and that "her rather menacing teeth are intact."

Because the record contains overwhelming evidence to substantiate a finding that the tiger represents an unreasonable risk of death or serious bodily harm to children, the trial court, sitting in equity, rightfully found the tiger to be an attractive nuisance, and therefore, properly issued the injunction.

Accordingly, we affirm the order of the Court of Common Pleas of Erie County.

## ORDER

NOW, August 4, 1989, the order of the Court of Common Pleas of Erie County, dated September 16, 1988, at No. 59–E–1988, is affirmed.

NARICK, Senior Judge, dissenting.

I must respectfully dissent. In this case, the majority affirms a trial court's grant of a *mandatory* injunction.[1] It finds that the Appellant's maintenance of a caged tiger at his residence constitutes a nuisance in fact, which it characterizes as an "attractive nuisance."

Firstly, I submit that the doctrine of attractive nuisance is wholly inapplicable to the facts of this case. Section 339 of the Restatement (Second) of Torts, which has been adopted by the Pennsylvania Supreme Court,[2] establishes a theory by which liability may be imposed upon a landowner for injuries to children who come upon his land. Our research has disclosed no cases in which the doctrine has been applied prospectively, to prevent harm which has not yet occurred. As the Supreme Court stated in *Cooper v. Reading*, 392 Pa. 452, 458, 140 A.2d 792, 795 (1958), "[t]his doctrine, by its express terms, applies *only* (emphasis in original) where a possessor of land has *maintained* (empha-

---

1. We have held that, for a mandatory injunction to issue, the party seeking the injunction must have established a *clear right* to relief. *Moyer v. Davis*, 67 Pa.Commonwealth Ct. 251, 446 A.2d 1355 (1982), *aff'd*, 501 Pa. 192, 460 A.2d 754 (1983). In addition, that party must present a stronger case than that required for a restraining-type injunction and must demonstrate that it will suffer irreparable harm if *immediate* relief is not granted. *Allen v. Colautti*, 53 Pa. Commonwealth Ct. 392, 417 A.2d 1303 (1980). Here, injunctive relief has been granted to eliminate a *possible* future injury, *i.e.,* because the threat of potential future injury exists. We have held that injunctive relief is not available to eliminate possible remote future injury or invasion of rights. *Jamal v. Commonwealth*, 121 Pa. Commonwealth Ct. 42, 549 A.2d 1369 (1988).

2. *See, e.g., Bartleson v. Glen Alden Coal Co.*, 361 Pa. 519, 64 A.2d 846 (1949).

sis in original) upon that land the structure or artificial condition *which has caused harm to children* (emphasis added)." There is no evidence in this case that any child has been injured, nor is there evidence that children *regularly* play [3] near the tiger's cage. (*See, e.g., Jennings v. Glen Alden Coal Co.*, 369 Pa. 532, 87 A.2d 206 (1952), which held that Section 339 was inapplicable where there was no evidence that children regularly played in the area of the accident or passed through it).

Secondly, I must disagree that there was sufficient evidence *presented* to the trial court to enable it to find that Appellant's tiger constitutes a nuisance in fact. The five findings of fact which the majority quotes in its opinion are drawn largely from the trial judge's personal view of the tiger in her cage. From this view, the judge drew certain conclusions with respect to the likelihood of future injury to a person approaching the cage and regarding the inability of the cage itself to contain the tiger once fully grown. However, there was no testimony adduced regarding either of these points at the hearing. In making these findings, the trial court judge was, in effect, serving as a witness. The danger of this procedure was highlighted by this Court in *Tid Bit Alley, Inc. v. Erie County Department of Health*, 103 Pa. Commonwealth Ct. 46, 59–60, 520 A.2d 70, 76 (1987):

> In *Cowan v. Bunting Glider Co.*, 159 Pa.Superior Ct. 573, 575–76, 49 A.2d 270, 271 (1946), the Superior Court stated:
>
>> Triers of fact, be they judges, jurors, viewers, board or commissions, may always visit and inspect the locus in quo to secure a better understanding of the evidence and to enable them to determine the relative weight of conflicting testimony. But a view cannot replace testimony; the visual observations of the trier cannot be substituted for testimony; and the only legitimate pur-

---

**3.** The only evidence of children playing in the vicinity of the tiger's cage was from Appellant's neighbor who, in response to a question from the trial judge, responded that he had seen children pet the tiger through the fence in Appellant's presence.

pose of an inspection is to illustrate the evidence and provide a base for understanding and comprehending testimony upon the record.... (Citations omitted.)

The rationale, according to Cowan, is that the trier of fact, by relying upon the view as an independent source, could thereby become a witness without taking the witness stand. (Footnote omitted.)

Finally, the deeper problem, I submit, lies in the analogy which the majority draws between the three cases it relies upon involving zoning ordinances and this case, which analogy allows it to reach the nuisance question in the first instance. Those three cases stand for the proposition that a court of equity may intervene to prohibit nuisances in fact despite the fact that zoning authorities have approved the contested use. The Court in *Mazeika v. American Oil Co.*, 383 Pa. 191, 118 A.2d 142 (1955), explained the reasoning behind the allowance of the intervention of equity. Noting that zoning is statutory, and exclusively a matter of law, the Court stated: "[i]t is only where statutory authorities do an illegal act, or one which they have no authority to perform, that equity will grant relief.... There are many instances involving land usage where the existence of a zoning law is of no concern." *Id.*, 383 Pa. at 194, 118 A.2d at 143 (citations omitted). While the cases the majority cites establish that zoning ordinances which allow a specific use are of no consequence when such use constitutes a nuisance in fact, in my view, they do not support the broader proposition that equity may always intervene to determine whether a given use constitutes a nuisance. Rather, reference should be had to the governing statutes in order to determine whether the body authorizing the contested use has exceeded its statutory authority. Accordingly, I would decide this case on the grounds raised and briefed by the parties, *i.e.*, whether Fairview Township (Township) exceeded its authority in attempting to regulate activities where the legislature has enacted comprehensive legislation.[4]

4. A second class township's power to prohibit nuisances or to protect the health, safety and welfare of its citizens arises via statute. *See*

I begin with an examination of the relevant provisions of the Game Code and its attendant regulations. 34 Pa.C.S. § 103(a) provides: "[t]he ownership, jurisdiction over and control of game or wildlife is vested in the [Game Commission] as an independent agency of the Commonwealth in its sovereign capacity to be controlled, regulated and disposed of in accordance with this title." 34 Pa.C.S. § 2963 governs the authorization of exotic wildlife possession permits. In pertinent part, that section provides:

(a) Authorization.—The [Game Commission] may issue permits to persons to possess exotic wildlife which shall authorize the holder to purchase, receive or possess exotic wildlife from any lawful source from within or without this Commonwealth.

(b) Shelter, care and protection.—No permit provided for in this section shall be granted until the [Game Commission] is satisfied that the provisions for housing and caring for such exotic wildlife *and for protecting the public* are proper and adequate and in accordance with the standards established by the [Game Commission]. (Emphasis added.)

As noted in the majority opinion, tigers are included in the definition of "exotic wildlife" in 34 Pa.C.S. § 2961.

The regulations governing the possession of exotic wildlife are found in 58 Pa.Code §§ 147.242–246 and 147.261–262. 58 Pa.Code § 147.261(c) provides that "[e]xotic wildlife shall be housed in a safe and sanitary manner. Failure to provide sanitary surroundings for exotic wildlife *or failure to adequately protect the public from exotic wildlife* possessed under the act and this subchapter is a violation of this subchapter." (Emphasis added.) The general safety provision is contained in 58 Pa.Code § 147.242, which provides as follows:

Section 702 of The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §§ 65712, 65747. Similarly, the Pennsylvania Game Commission's (Game Commission's) power to regulate and control exotic animals within this Commonwealth is statutory. *See* the provisions of the Game and Wildlife Code (Game Code), 34 Pa.C.S. §§ 101–2965.

(a) *Cage construction shall be sufficiently strong to contain exotic wildlife* and protect the animals from injury from other specimens held. A cage considered unsafe by [Game] Commission personnel shall be reconstructed as directed. Reconstruction shall be completed and approved within 10 days after official notification, or before new animals are placed in the cage.

(b) It is unlawful to exhibit exotic wildlife to the public, except a private showing for prospective customers or personal friends.

(c) Exotic wildlife may not be removed from cages or directly exposed to the public. (Emphasis added.)

In juxtaposition to this legislation is the general grant of power to second class townships under Section 702 of The Second Class Township Code. In *Commonwealth v. Ashenfelder*, 413 Pa. 517, 198 A.2d 514 (1964), and *Duff v. Township of Northampton*, 110 Pa. Commonwealth Ct. 277, 532 A.2d 500 (1987), *allocatur granted*, 518 Pa. 645, 542 A.2d 1373 (1988), local ordinances pursuant to Section 702 were held to be invalid in the face of comprehensive state legislation.[5] As the Supreme Court pertinently stated in *Ashenfelder*, 413 Pa. at 521–22, 198 A.2d at 515–16:

> it is well settled that townships, political subdivisions of the Commonwealth, possess only such powers as have been granted to them by the legislature, either in express terms or which arise by necessary and fair implication or are incident to powers expressly granted or are essential to the declared objects and purposes of the townships.... Conceding such to be the law, counsel for the township contends the legislature has delegated the necessary power to enact this ordinance by virtue of § 702 of The Second Class Township Code.... [T]he township argues that § 702 grants the 'widest possible powers to the

**5.** Although the Township attempts to distinguish the facts here from those of *Ashenfelder* and *Duff* on the grounds that it has not enacted an ordinance, I fail to see the distinction between a township which has enacted an invalid ordinance pursuant to Section 702 and one which claims the right to act pursuant to that same section without going through the process of enacting an ordinance.

Township Supervisors for the purpose of allowing them to take whatever appropriate measure might be necessary for securing the safety of persons or property within the Township.' In our view, the township somewhat inflates the legislative delegation of police power under § 702. An examination of § 702 indicates that its language is most inappropriate and inadequate to evidence any intent on the part of the legislature to delegate to second class townships vast and extensive police powers; certainly no intent is manifest or evident to grant powers to second class townships to act in areas where the Commonwealth itself, through legislative enactments, has provided regulation. (Citations and footnotes deleted.)

The Township argues that it is attempting to fill in the gaps the Commonwealth left in the Game Code and its regulations. It contends that both are primarily concerned with the safety, health and well-being of the animals themselves, while its concern is the safety of its citizens. However, a reading of the above-quoted statutory and regulatory sections belies that assertion. The Game Commission is given the responsibility to ensure that no permit will be granted unless it is satisfied that "provisions ... for protecting the public are proper." 34 Pa.C.S. § 2963. The Township is essentially arguing that it is not satisfied that the Game Commission has properly executed its statutory duty because it has granted Appellant an exotic wildlife possession permit for an area the Township feels is inappropriate and potentially dangerous.

Appellant responds that equitable relief under these circumstances is not proper because, if the Township believes the Game Commission regulations are inadequate or incomplete, it has an adequate remedy at law in the form of a petition filed with the Game Commission pursuant to 1 Pa.Code § 35.18 to request a hearing. That section provides:

A petition to an agency for the issuance, amendment, waiver or repeal of a regulation shall set forth clearly and concisely the interest of the petitioner in the subject

matter, the specific regulation, amendment, waiver or repeal requested, and shall cite by appropriate reference the statutory provision or other authority therefor. The petition shall set forth the purpose of, and the facts claimed to constitute the grounds requiring, the regulation, amendment, waiver or repeal. Petitions for the issuance or amendment of a regulation shall incorporate the proposed regulation or amendment.

In *Duff,* we specifically recognized the availability of this remedy to a township which believed its citizens were endangered by inadequate Game Commission regulations. Significantly, it should be noted that the Township here has not attempted to avail itself of this remedy to protect its citizens from this perceived danger.

Accordingly, I would hold that the Township has not shown that it has a clear right to the equitable relief granted, and that it has an adequate remedy at law. I would reverse.